**Erasmo MATA Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**NUMBER 13-16-00019-CR**

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed March 16, 2017

Rehearing Overruled May 15, 2017

---

17. *See id.* at 445.

ATTORNEY OF RECORD FOR THE APPELLANT: Carlos A. Garcia, Attorney at Law, 1305 E. Griffin Parkway, Mission, TX 78572.

ATTORNEYS OF RECORD FOR THE APPELLEE: Ricardo P. Rodriguez, Hidalgo County District Attorney, 100 N. Closner, Room 303, Glenn W. Devino, Assistant District Attorney, 100 N. Closner, 4th Floor, Edinburg, TX 78539.

Before Justices Rodriguez, Contreras, and Longoria

## MEMORANDUM OPINION

Memorandum Opinion by Justice Rodriguez

A jury found appellant Erasmo Mata Jr. guilty of one count of sexual assault of a child, a second-degree felony, and assessed punishment at four years' imprisonment and a $5,000 fine.[1] *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C), (f) (West, Westlaw through 2015 R.S.); *id.* § 22.011(c)(1) (defining "child" as "a person younger than 17 years of age"). The trial court rendered a judgment of conviction and sentence in accordance with the jury's verdict. By four

---

1. The jury acquitted Mata of a second count of sexual assault against the same complainant.

issues, which we have reorganized, Mata first contends that the evidence is insufficient to support a finding of guilt. He also asserts that the trial court erred when it denied the admission of text messages purportedly exchanged between complainant N.G.[2] and others; denied Mata's motion for new trial that alleged juror misconduct during deliberations; and refused to allow the completion of Mata's offer of proof. We affirm.

## I. Sufficiency of the Evidence and Verdicts

By his first issue, Mata contends the evidence is insufficient to support his conviction. *See id.* § 22.011(2)(C). Mata also complains that the jury's verdicts of guilty of sexual assault by contact and not guilty of sexual assault by penetration are conflicting and "cannot be logically sustained." In response, the State argues that "[t]he verdicts are readily explained: while the jury did not find beyond a reasonable doubt that penetration was achieved while [N.G.] was a child, the jury did determine that the evidence was adequate to establish that sexual organ to sexual organ contact had occurred" between N.G. and Mata while N.G. was a child. *See id.*

### A. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, a court will examine the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). The critical inquiry is whether the evidence would support a rational fact-finder determining that the defendant is guilty beyond a reasonable

doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We must not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (en banc). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Clayton*, 235 S.W.3d at 778.

The reviewing court measures the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). A hypothetically correct jury charge is authorized by the indictment, accurately sets out the law, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense in question. *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (en banc). In this case, to support a conviction for sexual assault by contact, the evidence must show that on or about July 15, 2013, Mata knowingly or intentionally caused the sexual organ of N.G., a child who was younger than seventeen years of age, to contact his sexual organ. *See* Tex. Penal Code Ann. § 22.011(a)(2)(C). On appeal, Mata specifically challenges the sufficiency of the evidence to establish the contact element of the offense. *See id.*

---

**2.** For the complainant in this case, we use N.G., initials from the pseudonym used at trial.

## B. Testimony

According to trial testimony, Mata met N.G. in May of 2013. At that time, Mata was a police officer with the Pharr Police Department. He was patrolling the area near N.G.'s apartment complex, and N.G. was outside her home. Mata stopped his vehicle and asked N.G. for her name and telephone number. They subsequently communicated by phone and Yahoo messenger and saw each other on occasion.

At trial, N.G. testified that in June or July 2013, when she was sixteen years old, she and Mata were alone at night in an empty apartment. Mata had removed N.G.'s clothes and his pants, with his underwear down to his knees, and was on top of her. According to N.G., although Mata told her that he wanted to have sex with her, she did not because "it was [her] first time." In response to her saying "no," Mata told her that nothing would happen, although, as N.G. recounted, Mata tried to "put his penis inside [her] vagina" "more than four times." N.G. testified that she felt "the front of his penis," "[t]he front of the—the head," "just a little bit." According to N.G., she told Mata to stop and agreed that she felt pain.

N.G. also testified about a second incident that occurred when she was sixteen. N.G. explained that she and Mata were in a lot behind her apartment, and Mata "was trying again to put his penis inside [her] vagina." She agreed, however, that nothing happened.

Finally, N.G. testified that the first time she had sex with Mata was when she "lost [her] virginity with him" in the back of a truck on October 20, 2013, after her seventeenth birthday. In the following testimony, N.G. compared the October 20 incident with the incident that occurred at the empty apartment when she was sixteen years old:

Q. Can you—why is that time on October 20th different from what happened in the apartment?

. . . .

A. Then he tried to put it inside and then I kept telling him it hurt, it hurt a lot. And then he would just put it all the way in.

Q. Okay. He put it all the way in?

A. Yes.

. . . .

Q. What did he do with his body?

A. He was going back and forth.

. . . .

Q. Okay. Now, I want you to think back to what happened in the apartment. How is what happened in the apartment different?

. . . .

A. [After removing their clothes,] then he tried to put his penis again in my vagina.

Q. And can you tell the jury—when you say, he tried to put his penis in, what do you mean?

A. Like, the front of the penis and I told him to stop because it was hurting.

The following exchange occurred when counsel asked N.G. to visually illustrate with her hand and finger what happened at the apartment and what happened in the truck.

Q. . . . [C]an you show the jury by holding your hands up to them, where the defendant put his penis?

A. Like right here.

Q. Okay. How is that different from what happened in the truck?

THE COURT: Could the record reflect that she has actually made a circle with her left hand and her finger, index finger on the right hand

and put it—describe how—what you did for the record.

THE WITNESS: This is my vagina and this is his penis and he was going like this.

THE COURT: What do you mean like—describe it for the record.

THE WITNESS: Inside—his penis inside my vagina like this.

Q. Now, how is that different from what happened in the pick-up truck? ... [S]how us with your hands the difference.

. . . .

A. First, in the apartment it was like this.

Q. And how many times did he put his finger inside—I'm sorry, put his penis inside of your vagina in the apartment?

A. Like, more than three times.

Q. Okay. Did he—was he able to put it fully inside?

A. No.

Q. Is that different from what happened in the pick-up truck in October?

A. Yes.

## C. Discussion

 In this case, the jury was able to assess the credibility and demeanor of N.G. as she explained the events, through words and visual depictions. N.G. testified that when she and Mata were at the empty apartment, she felt "[t]he front of his penis" "just a little bit" and that she felt "the front of the—the head." She testified that on a second occasion, Mata tried to put his penis inside her vagina, but nothing happened. The jury also heard N.G. testify about a third incident with Mata that occurred after her seventeenth birthday. The jurors observed N.G.'s verbal description along with her visual illustration of what occurred at the empty apartment and how it compared to what happened in the truck.

From N.G.'s testimony and visual representations, the jury determined that the sexual assault when N.G. was a child was by contact, not by penetration. The jury resolved any inferences from any incongruities that may have existed in favor of finding contact, and now we must presume such inferences in favor of the prosecution. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Clayton*, 235 S.W.3d at 778. And because it is the factfinder's duty to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, *see Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Clayton*, 235 S.W.3d at 778, we will not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the jury. *See Dewberry*, 4 S.W.3d at 740.

Reviewing the sufficiency of the evidence by examining the evidence in the light most favorable to the verdict, we conclude that the evidence supports a rational jury determining that Mata is guilty beyond a reasonable doubt of sexual assault of a child by contact—that he intentionally caused his sexual organ to contact N.G.'s sexual organ when she was sixteen years old. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *see also* TEX. PENAL CODE ANN. § 22.011(a)(2)(C). The evidence is sufficient to support Mata's conviction.

 Without supporting authority, Mata also argues that the verdict is insufficient because his conviction for sexual assault by contact is inconsistent with his acquittal for sexual assault by penetration. We disagree.

 A person commits an offense if he intentionally "causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth,

anus, or sexual organ of another person, including the actor...." Tex. Penal Code Ann. § 22.011(a)(1)(C). In acquitting Mata of sexual assault by penetration, the jury simply concluded that the State failed to prove penetration. And penetration is not an element necessary to show sexual assault by contact, which we have determined the State did establish. The intent of the jury is clear. There is no conflict or contradiction between the jury's two verdicts. So we also conclude that the verdict convicting him of sexual assault by contact is not impermissibly conflicting and is, thus, sufficient.

### 3. Summary

Having concluded that the evidence is sufficient for the jury to have found Mata guilty of sexual assault by contact and that the verdict of guilt by contact, not penetration, is also sufficient, we overrule Mata's first issue.

## II. Exclusion of Evidence, Allegedly for the Impeachment of N.G.

By his second issue, Mata contends the trial court abused its discretion when it excluded from evidence Defense Exhibit 14, purportedly hundreds of text messages dumped from N.G.'s cell phone. Mata asserts that "the trial court committed reversible error when it denied [his] sixth amendment right of confrontation of [N.G.,] a key witness[,] through impeachment evidence," by refusing to admit Defense Exhibit 14. *See* U.S. Const. amend. VI.

Although Mata briefs this issue with a focus on his constitutional right to cross-examination, we interpret his complaint as alleged error in the exclusion of evidence. *See Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993) (en banc) (interpreting a complaint that trial court refused to allow defense counsel to recall witness for further cross-examination as being predicated on exclusion of evidence). The State responds by countering that Mata failed to preserve any error because he did not make an offer of proof and, alternatively, that the trial court did not err because Mata did not authenticate the exhibit. We agree with the State on both grounds.

### A. Preservation

In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with rule 103 of the Texas Rules of Evidence by making an offer of proof, which sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 103(a)(2) (providing that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked)). The offer of proof may consist of a concise statement by counsel or it may be in question and answer form. *Id.* If in the form of a statement, the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the trial court can determine whether the evidence is relevant and admissible." *Id.* at 889–90 (quoting *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (en banc) (per curiam)).

When being cross-examined outside the presence of the jury about the contents of Defense Exhibit 14, N.G. testified that she did not recognize the referenced cell phone number from which the texts were alleged to have come. And after reviewing a list of text messages from Defense Exhibit 14, she informed defense counsel that she did not recognize any of the text messages

associated with that number. N.G. also testified that she did not remember the cell phone number she had in 2013; she had a new number at the time of trial. Nonetheless, Mata offered the text messages as a defense exhibit for impeachment purposes. The State objected "under improper foundation." And the trial court sustained the State's objection, denying the admission of Defense Exhibit 14 on the basis that "[i]t's not authenticated, it's not going to be admitted."

During the cross-examination of Sergeant Daniel Garza, who assisted with the investigation in this case, Mata again sought the admission of the text messages. Sgt. Garza testified that the phone dump was from N.G.'s phone. He also agreed that the information downloaded from that phone was accurate and reliable and that he would rely on it as part of his investigation. But Sgt. Garza could not provide testimony regarding who sent the messages, only that the messages were received on N.G.'s phone. The State objected, in relevant part, that "there has not been a proper foundation laid" and "[t]his witness cannot testify as to the authenticity of those messages, only that he did get them from a data dump. He can't testify as to who sent those messages, where they were coming from." The trial court again sustained the State's objection.

Upon the trial court's denial of Mata's first offer of the text messages into evidence, Mata did not set out an offer of proof either in the form of a concise state-

ment by counsel reasonably summarizing the evidence he sought to be admitted and stating the relevance of the evidence, or in the form of questions and answers developing the same.[3] See id.; see also Tex. R. Evid. 103(a)(2). Likewise, Mata made no offer when the trial court denied his later attempt to admit the exhibit through Sgt. Garza. And it is not apparent from the context within which the questions were asked whether either N.G. or Sgt. Garza would have testified that the text messages provided evidence that would have impeached N.G. Without an offer of proof, we decline to speculate about the nature of excluded testimony.[4] Error was not preserved for our review. See Mays, 285 S.W.3d at 889.

## B. Authentication

Even absent this preservation determination, we cannot conclude that the trial court abused its discretion when it denied the admission of this evidence on the basis that Mata had not authenticated it. Mata claims that N.G. exchanged the text messages with others not involved in this case and that evidence of the text messages she received would impeach her prior testimony about being "in love" only with Mata.

### 1. Applicable Law and Standard of Review

"Evidence has no relevance if it is not authentically what its proponent claims it to be." Tienda v. State, 358 S.W.3d 633,

---

3. Mata attached Defense Exhibit 14 to his motion for new trial but did not offer it into evidence at the new-trial hearing; so it was not before the trial court for consideration. We also note that Mata's claim on appeal challenging the court's denial of a new trial does not address any evidentiary issues. Instead, it rests only on allegations of outside influence of the jury.

4. At the hearing on Mata's motion for new trial, defense counsel did state that the text messages would establish that, despite N.G. having described Mata as "the first person I liked," the text messages showed that N.G. was texting with other men. However, this information regarding the texts was not before the trial court when it refused to admit the exhibit at trial, such that we might consider it as an offer of proof for the purposes of preservation.

638 (Tex. Crim. App. 2012). Under Texas Rules of Evidence 104(a), whether or not to admit evidence at trial is a preliminary question to be decided by the court. *See* TEX. R. EVID. 104(a). In performing its rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic. *See id.* "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda*, 358 S.W.3d at 638; *see* TEX. R. EVID. 901(a).

■ As with other types of evidence, the proponent may authenticate text messages by "evidence sufficient to support a finding that the matter is what its proponent claims." *Butler v. State*, 459 S.W.3d 595, 600–01 (Tex. Crim. App. 2015) (quoting TEX. R. EVID. 901(a)). He can accomplish this in a myriad of ways, depending on the unique facts and circumstances of the case, "including through the testimony of a witness with knowledge or through evidence showing distinctive characteristics." *Id.* at 601 (citing TEX. R. EVID. 901(b)(1) (testimony of a witness with knowledge); *id.* R. 901(b)(4) (distinctive characteristics and the like)). "Still, evidence that merely shows the association of a phone number with a purported sender—*alone*—might be too tenuous." *Butler*, 459 S.W.3d at 601; *Tienda*, 358 S.W.3d at 641–42 (observing that the fact "that a text message emanates from a cell phone number assigned to the purported author ... without more," might be "[in]sufficient to support a finding of authenticity").

■ "The trial court's determination of whether the proponent has met this threshold requirement is subject to appellate review for an abuse of discretion." *Butler*, 459 S.W.3d at 600.

**2. Discussion**

■ At trial, Mata contended that the exhibit contained text messages sent and received by N.G. But when asked to review the exhibit outside the presence of the jury, N.G. testified that she could not identify the referenced telephone number from which the texts were obtained as having been hers, she had no recollection of the conversations with others, and she did not recognize specific messages highlighted by Mata, even though they were sent and received on her seventeenth birthday. Similarly, while Sgt. Garza testified that the text messages or phone dump came from N.G.'s phone, he could not testify from whom any text was received. In other words, Sgt. Garza could not authenticate who sent the messages, only that they were received on N.G.'s phone.

We cannot say that Mata, the proponent of the impeachment evidence, satisfied his burden of supplying facts that were sufficient to support a reasonable jury determination that the cell phone and its associated text messages were authentic. *See Tienda*, 358 S.W.3d at 638. The only evidence linking N.G. to the text messages is Sgt. Garza's testimony that the telephone from which the messages were "dumped" belonged to N.G. There is no evidence of any distinctive characteristics found in the text messages that would associate N.G. with the phone and any text message. *See Butler*, 459 S.W.3d at 601; *see also* TEX. R. EVID. 901. There is no testimony of a witness with knowledge that would show the association of the phone and its text messages with N.G. *See Butler*, 459 S.W.3d at 601; *see also* TEX. R. EVID. 901. In this case, the evidence showing that the text messages were dumped from a phone that belonged to N.G., the purported sender or receiver, without more, is too tenuous. *See Butler*, 459 S.W.3d at 602; *Tienda*, 358 S.W.3d at 641–42. The above evidence is

not sufficient to support a finding that the matter is what Mata claims. *See Butler*, 459 S.W.3d at 600–01; *see also* Tex. R. Evid. 901(a). The trial court did not abuse its discretion in determining that Mata did not meet his burden in this regard. *See Butler*, 459 S.W.3d at 600.

### 3. Summary

Because Mata did not preserve error for our review, *see Mays*, 285 S.W.3d at 889, and because, even had he preserved error, Mata did not satisfy his burden to demonstrate that the text messages were authentic, *see* Tex. R. Evid. 104(a); *see also Butler*, 459 S.W.3d at 600; *Tienda*, 358 S.W.3d at 637–38, we overrule Mata's second issue.

### III. Motion for New Trial

By his third issue, Mata contends that the trial court committed reversible error when it denied his motion for a new trial that was based on improper outside influences on the jury. *See* Tex. R. Evid. 606(b); *see also* U.S. Const. amend. VI. He further complains, by his fourth issue, that the court erred when it interrupted his offer-of-proof proceedings after the trial court denied his motion.

### A. Outside Influences on the Jury

By his third issue, Mata contends that the trial court committed reversible error when, pursuant to Texas Rule of Evidence 606(b), it denied his motion for a new trial that was based on improper outside influences on the jury. *See* Tex. R. Evid. 606(b)(2)(A). Mata complains that he was denied his constitutional right to cross-examine a juror who "testified, essentially as an expert witness inside the jury room and without the hindrance of cross-examination or confrontation guaranteed by the Sixth Amendment to the Constitution." *See*

U.S. Const. amend VI. The State responds, in relevant part, that Mata's claim fails because his motion for new trial challenged the internal, deliberative jury process and not outside influences on the jury. *See* Tex. R. Evid. 606(b). We agree with the State.

### 1. Standard of Review and Applicable Law

 We review a trial court's denial of a motion for new trial under an abuse of discretion standard and decide whether its decision was arbitrary or reasonable. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). A trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support the trial court's ruling. *Id.*

Texas Rule of Evidence 606(b) provides that a juror may not testify about "any matter or statement occurring during the jury's deliberations," except that a juror may testify about "whether any outside influence was improperly brought to bear upon any juror" or "to rebut a claim that the juror was not qualified to serve." [5] Tex. R. Evid. 606(b). Although rule 606(b) does not define "outside influence," in *McQuarrie*, the court of criminal appeals explained that an "outside influence" is "something originating from a source outside of the jury room and other than from the jurors themselves." 380 S.W.3d at 154; *see Soliz v. Saenz*, 779 S.W.2d 929, 932 (Tex. App.— Corpus Christi 1989, no pet.) ("To constitute 'outside influence,' the source of the information must be one who is outside the jury, *i.e.*, a non-juror, who introduces the information to affect the jury's verdict.").

 " '[O]utside influence' has been interpreted by Texas courts to include factual or legal information conveyed to the jurors by a bailiff or some other unautho-

---

5. The latter exception is not relevant in this case.

rized person, who intends to affect the deliberations." *Colyer v. State*, 428 S.W.3d 117, 125 (Tex. Crim. App. 2014). "But the outside influence exception does not include influences such as coercion by a fellow juror or the discussion of a juror's own personal knowledge." *Id.*

### 2. Juror Testimony

After the trial court denied Mata's motion for new trial, Mata proceeded with an offer of proof. He called Diana Criselda Sanchez, a juror in this case, as his sole witness.

Sanchez testified that although the jury reached a unanimous agreement as to punishment, "it was not completely agreed upon. It was [a] forced agreement." She explained that half of the jurors leaned toward probation and the other half considered some jail time. But, according to Sanchez, there was one juror who was "pretty adamant on a very lengthy time [in] prison." [6]

Sanchez also agreed that during jury deliberations she received personal examples from some of the jurors about how sex offenders re-offend. Sanchez testified that one juror who worked as a jail guard informed the others that "he worked with pedophiles and they keep repeating, so therefore they belong in jail." Sanchez also explained that another juror "mentioned that probation would not be an option because her husband had been [o]n probation and actually broke the law ... and therefore probation would probably not be an option for him either."

### 3. Discussion

Under rule 606(b), an "outside influence" must originate from outside of the jury room and not from the jurors themselves. *See McQuarrie*, 380 S.W.3d at 151. Coercive activity in the jury room during deliberations, such as that testified to by Sanchez, is not proof of an impermissible "outside influence" for purposes of showing jury misconduct pursuant to rule 606(b). *See Colyer*, 428 S.W.3d at 125. And Sanchez's offer-of-proof testimony that some of the jurors had personal reasons, which they voiced, for determining punishment, does not constitute impermissible outside influence; so that testimony is also inadmissible. *See id.*; *Soliz*, 779 S.W.2d at 932 (explaining that a juror's interjection of personal experience or expertise into the discussion does not constitute outside influence).

Even if the trial court fully credited the above-noted testimony from Mata's offer of proof and Sanchez's affidavits, one filed in support of Mata's motion for new trial and a second filed in support of his amended motion for new trial,[7] the court had to then make a rule 606(b) analysis to determine if the two jurors' information about repeat offenders would qualify as "outside influences" before considering that testimony to impeach the verdict. In this case, we conclude that neither the first juror's discussion about his work experience as a jail guard nor the second juror's information about her spouse being a felon and how the respective experiences im-

---

6. Sanchez averred in her affidavit attached to Mata's motion for new trial that "[o]ne particular juror commented that if we did not agree with prison time [and only considered probation], he was only going to agree to 20 yrs and no less." Sanchez continued, "I felt I was forced to agree to this number (4 years) and ... in no way was this agreement of my own free will."

7. Although the State contended that the amended motion was untimely, we offer no opinion regarding the timeliness of the filing of Mata's Amended Motion for New Trial, as it is not dispositive of this appeal. Tex. R. App. P. 47.1.

pacted the jurors' positions on punishment qualified as an "outside influence." So, under rule 606(b), the trial court was not permitted, much less required, to consider Sanchez's testimony or affidavits to impeach the verdict. *See Colyer,* 428 S.W.3d at 127.

Because the matters at issue did not qualify as an improper outside influence, the trial court correctly refused to consider Sanchez's testimony and affidavits because they were inadmissible under rule 606(b). *See* TEX. R. EVID. 606(b). The trial court did not abuse its discretion in denying Mata's motion for new trial that was based on juror misconduct. *See McQuarrie,* 380 S.W.3d at 150. We overrule the third issue.

## B. Offer of Proof

By his fourth issue, Mata contends that the trial court committed reversible error by not allowing Mata to complete an offer of proof developing his outside-influence argument. The State asserts that the trial court did not impermissibly curtail Mata's offer of proof. We agree with the State.

### 1. Applicable Law

When the trial court excludes evidence, in order to preserve error, rule of evidence 103(a)(2) provides for an offer of proof to inform the court of the substance of the excluded evidence, unless it is apparent from the context. TEX. R. EVID. 103(2). The right to make an offer of proof is absolute. *Kipp v.* State, 876 S.W.2d 330, 333 (Tex. Crim. App. 1994). A trial court does not have the option to deny such a request, although such denial is subject to a non-constitutional harm analysis. *See Potier v. State,* 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (en banc); *Kipp,* 876 S.W.2d at 333.

### 2. Discussion

After the trial court denied Mata's request for leave to allow a juror to testify about purported outside influences and denied his motion for new trial, Mata requested that he have leave to make an offer of proof to set out evidence supportive of his outside influence claim. *See* TEX. R. EVID. 103(2); *Kipp,* 876 S.W.2d at 333. Before the trial court left the courtroom, it advised counsel that Sanchez could be sworn in and provide her testimony. Sanchez was sworn in by the court reporter and began testifying. When the trial court returned to the courtroom, it interjected its concerns about Sanchez's testimony and directed Mata's attorney to "get to the questions about outside influences."

Once Mata's counsel asked questions addressing matters other than those presented in the motion for new trial and in Sanchez's supporting affidavit, the trial court did nothing to stop counsel from developing the record. And after asking a series of questions and receiving answers, without direction or request from the trial court, Mata's counsel announced that he had no further questions to pose.

Based on our review of the transcript of the motion for new trial hearing, the trial court allowed Mata to make his offer of proof. *See* TEX. R. EVID. 103(2); *Kipp,* 876 S.W.2d at 333. Mata's arguments that the court did not allow him to finish his offer have no merit. We overrule Mata's fourth issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.