

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00172-CR

———————————————————

PETTIS MILAN WATSON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1633674

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Pettis Milan Watson appeals his conviction for online solicitation of a minor. Watson raised four issues in his opening brief, but after the State filed its brief conceding that the trial court had abused its discretion by admitting the unauthenticated text messages that form the basis of Watson's conviction and that such admission was harmful, Watson filed a supplemental brief requesting that we sustain that sole issue, waiving his other issues, and seeking that we reverse the trial court's judgment and remand this case for a new trial. We agree with the parties; therefore, we reverse and remand.

## II. Background

Because the State "is satisfied" with Watson's statement of facts, we set forth the relevant portions of that background here.[1]

### A. The Investigation

In February 2020, Sergeant Krystal Kaether[2] with the Tarrant County Sheriff's Office was working an undercover sting operation when she posed and posted as a

---

[1] *See Rattani v. State*, No. 02-19-00373-CR, 2020 WL 1949016, at *1 n.2 (Tex. App.—Fort Worth Apr. 23, 2020, no pet.) (mem. op., not designated for publication); *Burton v. State*, No. 05-08-01609-CR, 2009 WL 4879493, at *1 (Tex. App.—Dallas Dec. 18, 2009, no pet.) (not designated for publication) (using facts from appellant's brief when the State agreed that "a satisfactory statement of the factual background" had been set out in appellant's brief).

[2] Sergeant Kaether's first name is misspelled as "Crystal" in the reporter's record.

fifteen-year-old girl on a social media app called "Whisper."[3] An individual with the username "Person" initiated contact with her. This individual identified himself as "Pettis" and sent several "selfie" images of a black male. Sergeant Kaether told the individual that she was fifteen years old, and the individual responded that he was twenty years old. After exchanging phone numbers, "Pettis" and Sergeant Kaether continued communicating by text message.

Over text message, the individual again identified himself as "Pettis" and sent more images of the same black male. "Pettis" asked Sergeant Kaether whether she was a virgin and made other sexually explicit comments. "Pettis" told Sergeant Kaether that he wanted to hang out and offered to digitally penetrate her vagina. Sergeant Kaether invited "Pettis" to meet her at a park, but nobody showed. The next day, "Pettis" and Sergeant Kaether agreed to meet at her home, but again, nobody appeared.

Sergeant Kaether ended her investigation and obtained an arrest warrant for Watson.

### B.    Voir Dire of Sergeant Kaether and Objections to Evidence

Prior to the start of testimony, defense counsel took Sergeant Kaether on voir dire outside the presence of the jury. Sergeant Kaether explained that after she had met an individual on the social media app Whisper, they had exchanged phone

---

[3]As Sergeant Kaether explained during her testimony, "Whisper is an online social media [app] where you can post a picture and [where] you can have text over the picture. People call them 'confessions.' And people just say things, and then there's a private communication that can be started from whatever you post."

numbers. Sergeant Kaether then received several text messages from the phone number that she was given and used a law-enforcement database to "connect" Watson to the phone number used to send the text messages. This database provides the individual's name after a law-enforcement officer enters in the telephone number. The information from this database, along with the selfie, led Sergeant Kaether to identify Watson as the author of the messages.

Defense counsel objected to the admission of the text messages because they were not properly authenticated. Defense counsel specifically argued that the State did not provide additional evidence beyond the "mere content of the message itself"—such as forensic computer examination, subpoenaed phone records, or a witness's testimony that the text messages were similar to others sent by Watson—to show that Watson was the author of the text messages. Defense counsel also argued that the photographs of Watson were not, by themselves, enough to authenticate the text messages because images of individuals are accessible to the public over the internet; alternatively, if someone had access to another individual's phone or computer, then that person would also have access to the images thereon.

The State responded by arguing that the totality of the evidence supported authenticity because there was sufficient identifying information on the social media application and over text messages to show that Watson was the author. On the social media application, the individual provided his name and phone number and sent a selfie. Over text messages, the individual again stated his name in the

4

conversation and sent a selfie, and then law enforcement researched the phone number. All these sources, the State claimed, came back with "the same person"—Watson. In turn, defense counsel argued that the State was attempting to prove authentication by cross-referencing two non-authenticated pieces of evidence; in other words, at least one source needed to be independently authenticated before it could authenticate the other.

After hearing argument, the trial court overruled defense counsel's objections. The trial court ruled that the images sent of Watson provided sufficient evidence to corroborate the identity of the text messages' author. However, the trial court did grant Watson's request for running objections to "all evidence about the text messages and Whisper apps," and defense counsel asserted those objections prior to the introduction of each of the exhibits by the State. The records of the text messages, Whisper app conversations, and photographs were then admitted into evidence for the jury.

### C.   Cross-Examination of Sergeant Kaether

During cross-examination in the State's case-in-chief, Sergeant Kaether made multiple admissions that conclusively demonstrated her failure to take reasonable steps to authenticate the text and Whisper app messages. First, she admitted that it was possible for any person to use a "spoofing" website to send fraudulent text messages from another person's phone number. She admitted that she could have, but did not, get a subpoena for Watson's cell phone records, download his text

5

messages, or compare them to the text messages sent in this case and that doing so would have helped rule him in or out as the sender. She admitted (1) that she could have, but did not, get a search warrant for Watson's cell phones and computers and (2) that she could have, but did not, use Cellebrite or other software to download their contents and verify that the texts had come from Watson's cell phone or other device and that he was the one using the device at the time they were sent. She admitted that she did not know who, if anyone, was living with Watson at the time the text messages were sent, how many cell phones or other devices Watson possessed that could send those text messages, or who had access to those devices. Finally, she admitted that she had no personal knowledge as to the identity of the individual who had sent the text messages.

### D. Verdict

During its deliberations, the jury sent back four separate notes asking for additional exhibits and for testimony to be read back and then two notes informing the trial court that the jury could not reach a verdict. After defense counsel twice moved for a mistrial and was twice denied, the trial court proposed sending the jury an *Allen*[4] charge. Over defense counsel's objection, the trial court submitted the *Allen* charge, and shortly thereafter, the jury found Watson guilty of the charged offense.

---

[4] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896); *see Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) (explaining that an *Allen* charge is a supplemental jury instruction that "reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve").

6

The parties agreed to a sentence of five years, probated over a period of five years, and the trial court sentenced Watson accordingly.

## III. Harmful Error in Admitting Texts

In his first issue, Watson argues that the trial court abused its discretion by admitting, over his objections, the text messages that Sergeant Kaether received from a person identified as "Pettis." The State concedes that the trial court abused its discretion by admitting the text messages and that the admission of this evidence was harmful. We agree that harmful error is present.

### A. Standard of Review

We review the trial court's admission of evidence for an abuse of discretion—an abuse of discretion occurs when the ruling falls outside the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Merrick v. State*, 567 S.W.3d 359, 375 (Tex. App.—Fort Worth 2018, pet. ref'd).

### B. Applicable Law

Rule 901(a) of the Rules of Evidence defines authentication as a condition precedent to admissibility of evidence that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Whether the proponent has crossed this threshold as required by Rule 901 is one of the preliminary questions of admissibility contemplated by Rule 104(a). *Tienda*, 358 S.W.3d at 638.

We have previously explained that authenticity in the context of electronic messages

> includes a subsidiary issue: whether the messages were authored by the purported sender. Although the trial court's preliminary authenticity determination is a "low bar," evidence "that merely shows the association of a phone number with a purported sender—*alone*—might be too tenuous" to show authorship. *Butler*[ *v. State*], 459 S.W.3d [595,] 601–02[ (Tex. Crim. App. 2015)] (analogizing a cell phone number to a return address on a letter); *Gardner*[ *v. State*, No. 02-14-00459-CR], 2015 WL 4652718, at *2[ (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication)]; *see Tienda*, 358 S.W.3d at 641–42 (observing that "cell phones can be purloined" and thus evidence "that a text message emanates from a cell phone number assigned to the purported author . . . without more . . . [i]s [in]sufficient to support a finding of authenticity"); *Chavezcasarrubias*[ *v. State*, No. 02-14-00418-CR], 2015 WL 6081502, at *2[ (Tex. App.—Fort Worth Oct. 15, 2015, no pet.) (mem. op., not designated for publication)]. To "bridge the logical gap" and permit an inference that the person associated with a specific cell phone number authored and sent the text messages at issue, the proponent is generally required to offer additional direct or circumstantial evidence—such as testimony from a witness with knowledge, contextual details indicating authorship, or distinctive content in the substance of the messages themselves. *Butler*, 459 S.W.3d at 601–03; *see also* Tex. R. Evid. 901(b).

*Cain v. State*, 621 S.W.3d 75, 80 (Tex. App.—Fort Worth 2021, pet. ref'd).

## C. Error Analysis

As concisely summarized by the State,

Here, the State's only witness, Sergeant Kaether[,] testified that she had created an account on Whisper. On February 20, 2020, she received a message from someone with the profile name "Person," who then said his name was Pettis. During this exchange, ["Pettis"] sent her a picture of [a black male that was allegedly] himself, and the two exchanged phone numbers. ["Pettis"] then texted her from the number he had provided and sent two more pictures of himself. Sergeant Kaether told the jury that she was able to connect the phone number from which she

8

was receiving the text messages to [Watson]. She also compared the pictures with his driver's license photo[;] they were the same person. But other than this testimony, the State presented no evidence to "bridge the logical gap [that] would permit a proper inference that the purported author sent the message[s]." [Record references omitted.]

Because there was no evidence—such as testimony from a witness with knowledge, contextual details indicating authorship, or distinctive content in the substance of the messages themselves—that the text messages were authored by Watson, the trial court thus abused its discretion by admitting them. *See Mata v. State*, 517 S.W.3d 257, 266–67 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (mem. op.) (holding that appellant did not demonstrate that the text messages were authentic when there was no testimony of a witness with knowledge that would show the association of the phone and its text messages with the complainant).

### D. Harm Analysis

Having concluded that the trial court abused its discretion by erroneously admitting the text messages, we must review the record to determine if the error is reversible. *See* Tex. R. App. P. 44.2. Because the error is not constitutional, we apply Rule 44.2(b). Tex. R. App. P. 44.2(b); *Patterson v. State*, 508 S.W.3d 432, 440 (Tex. App.—Fort Worth 2015, no pet.). That rule requires us to disregard any nonconstitutional error that does not affect appellant's substantial rights. Tex. R. App. P. 44.2(b); *Patterson*, 508 S.W.3d at 440. A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*,

9

953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In deciding that question, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

The State concedes that "the text messages were the only evidence supporting [Watson's] conviction" and that "[t]here is no question that their admission had a substantial and injurious effect or influence in determining the jury's verdict." We agree,[5] and we sustain Watson's first issue.[6]

---

[5]Although Watson raises a sufficiency challenge in his third issue, under the circumstances presented here, it does not provide greater relief than his evidentiary challenge. When an appellant raises both a claim of trial-court evidentiary error and a claim of insufficient evidence, there is often so much overlap that it is hard to separate the two claims. *See Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). The Court of Criminal Appeals has explained how this might play out:

For example, suppose that the identity of a bank robber is proven through the testimony of one and only one witness at trial. Suppose further that this witness'[s] testimony is rank hearsay: "Little Nell told me that Simon was the bank robber." On appeal[,] a defendant might raise a hearsay claim and a claim of sufficiency of the evidence to prove identity. He will have the right to have the hearsay question considered on its merits only if he objected properly at trial; he will have the right to have the question of the sufficiency of evidence to prove identity considered on its merits whether or not he objected.

But an appellate court must consider *all* evidence actually admitted at trial in its sufficiency review and give it whatever weight and probative value it could rationally convey to a jury. Thus, even if the trial court erred [by] admitting the witness'[s] testimony of Little Nell's out-of-court statement, the reviewing court must consider that improperly[ ]admitted hearsay in assessing the sufficiency of the evidence to prove the bank robber's identity. As Professors Dix and Dawson explain[,] "An appellant . . . is not entitled to have an appellate court first consider the appellant's complaints concerning improper admitted evidence and, if it resolves any of those in favor of the appellant, to then, second, consider the sufficiency of the *properly*[ ]*admitted* evidence to support the conviction." There is much logic in that rule:

> This rule rests in large part upon what is perceived as the unfairness of barring further prosecution where the State has not had a fair opportunity to prove guilt. A trial judge's commission of trial error may lull the State into a false sense of security that may cause it to limit its presentation of evidence. Erroneous admission of hearsay evidence, for example, may cause the State to forego offering other evidence that would ultimately prove admissible.

In our example, had the judge excluded the hearsay identification evidence, the State might have put on other evidence to prove identity. The remedy lies in a new trial, not an acquittal for insufficient evidence, because "[t]he risk of frustrating the State's legitimate interest in a full opportunity to prove guilt, in any case, outweighs the defendant's interest in being subjected to trial only once."

## IV. Conclusion

Having sustained Watson's first issue, which is dispositive of his appeal, we reverse the trial court's judgment and remand this case for a new trial.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 2, 2024

---

*Id.* at 489–90 (footnotes omitted). Based on this guiding precedent for when the sole evidence presented was erroneously admitted, we agree with the parties that the case should be remanded for a new trial.

[6]As noted in the introduction, in Watson's supplemental brief, he requested this court to decide this case solely on his first issue and explained why we did not need to reach other issues. We thus conclude that he has abandoned his remaining issues. *See, e.g., Gomez v. State*, No. 13-09-00039-CR, 2011 WL 6142735, at *1 n.1 (Tex. App.—Corpus Christi–Edinburg Dec. 8, 2011, no pet.) (mem. op., not designated for publication) (stating that appellant initially presented three issues on appeal but abandoned his second issue regarding jury misconduct in his reply brief).