

## NUMBER 13-21-00230-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

KERVIN EUGENE BRYANT,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Justice Longoria**

Appellant Kervin Eugene Bryant was found guilty by a jury of possession with intent to deliver between four and two hundred grams of cocaine, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). Having found an enhancement paragraph true, the jury sentenced Bryant to ninety-nine years' imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice and assessed a $10,000

fine. By twelve issues, which we reorganize and renumber, Bryant argues the trial court abused its discretion when it: (1) denied his motion to suppress; (2) denied his discovery request; (3) denied his motion for continuance; (4) denied his objection to a presentation slide during jury selection; (5) overruled his objection to the State's reference to a person during opening statements; (6) admitted various pieces of evidence and testimony over his objection; and (7) denied his motion for mistrial. We affirm.

## I. BACKGROUND

On December 5, 2018, Victoria Police Department (VPD) officers Timothy Ramirez, Justin Garcia, Steven Castaneda, and Ricardo Soto arrived at Crossroads Apartments (Crossroads) in Victoria, Texas at approximately 1:45 p.m. The officers went to Crossroads to serve two arrest warrants on Bryant.[1] Michelle Gallegos, manager for Crossroads, informed the officers which apartment Bryant lived in and provided them a key to enter his apartment. Just after 2:00 p.m., the officers knocked on the door to Bryant's apartment and announced their presence. After receiving no response, the officers used the key provided by Gallegos to unlock the door to Bryant's apartment; however, the door could not open all the way due to a chain lock from the inside. Through the open crack of the door, Ramirez observed a person standing inside the apartment and detected a strong odor of unburnt marijuana coming from inside the residence. Ramirez thereafter breached the door with his foot. Bryant was ordered to turn away and walk backwards towards the officers; Bryant complied and was placed in handcuffs.

---

[1] The two arrest warrants were for two separate offenses of manufacture/delivery of a controlled substance, Penalty Group 1, in an amount between four and two hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a).

2

Upon Bryant's arrest, Castaneda performed a pat-down search of Bryant and found keys inside Bryant's pockets, which were later set aside and held as Bryant's "jail property." After Bryant was arrested, Ramirez, Garcia, and Castaneda entered the apartment to conduct a safety sweep to determine if any other persons were inside and found none. However, the officers detected a strong scent of unburnt marijuana inside the apartment. After the safety sweep, the officers exited the apartment. Castaneda transported Bryant to jail, and Soto left the scene to obtain a search warrant, the basis of which was the odor of unburnt marijuana inside Bryant's apartment and the previous knowledge and investigation of Bryant's involvement in the manufacture, delivery, storage, and sale of illegal narcotics.

The search warrant was signed by a magistrate at 3:45 pm. After the search warrant was signed, officers re-entered Bryant's apartment to execute the warrant and found a locked safe in Bryant's bedroom closet. Ramirez called Castaneda and asked him whether there was a set of keys found on Bryant when he was taken to jail. Castaneda then went to the jail at 4:05 p.m. to obtain the set of keys from Bryant's "jail property," and left the jail at 4:11 p.m. to transport the keys back to Bryant's apartment. Officers used the keys obtained from Bryant's "jail property" to unlock the safe and found crack cocaine, powder cocaine, marijuana, ecstasy, Adderall pills, and synthetic marijuana. A revolver, a piece of paper with a list of names, and $500 in cash in multiple denominations were also found inside the safe. The substances found in the safe were later sent to the Corpus Christi Crime Lab. The lab tested one of the substances and determined it was cocaine, which had a net weight of 28.6 grams, including adulterants and dilutants.

3

Bryant was later indicted and tried for committing three criminal offenses: possession with intent to deliver between four and two hundred grams of cocaine (Count 1), *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a); tampering with physical evidence (Count 2), *see* TEX. PENAL CODE ANN. § 37.09; and unlawful possession of a firearm (Count 3), *see id.* § 46.04. Counts 2 and 3 were abandoned by the State during trial. The jury found Bryant guilty of possession with intent to deliver between two and four hundred grams of cocaine (Count 1). This appeal ensued.

## II.    MOTION TO SUPPRESS

In his first issue, Bryant contends the trial court abused its discretion when it denied his motion to suppress the contents of the safe, which he argues were obtained in violation of his Fourth Amendment rights. As part of his first issue, Bryant presents three sub-issues which we address separately below.

On May 7, 2021, the trial court held a hearing on Bryant's suppression motion. At the suppression hearing, Bryant argued that the search of his home was illegal because officers conducted the search *prior* to obtaining a search warrant. Bryant also argued that the search warrant itself was not valid with respect to the contents of the safe:

> [T]here was no mention of the safe . . . in that search warrant . . . .There is nothing linking [Bryant] to a safe in the apartment, and the probable cause claimed in the affidavit was merely based on basically [Bryant's] name. There's no linking to [Bryant] at that location . . . to the search warrant there, only an arrest warrant for two prior incidents.

After the State responded, Bryant waived his right to remain silent and testified as follows:

> [Counsel]:              Are you the Kervin Bryant mentioned in the arrest warrants?

4

| [Bryant]: | Yes, sir, I am. |
| [Counsel]: | Okay. And can you tell us where you were living on December 5th, 2018? |
| [Bryant]: | 1603 Azalea Street, Victoria, Texas, Apartment C2. |
| [Counsel]: | Were you arrested at 1603 Azalea Street, Victoria, Texas, Apartment C2? |
| [Bryant]: | Yes, I was. |
| [Counsel]: | Were you arrested at 3:00 p.m. on that day at that location? |
| [Bryant]: | Yes, I was. |
| [Counsel]: | Are you aware of the arrest warrants that . . . contained your name? |
| [Bryant]: | Yes, I was. |
| [Counsel]: | Okay. Were you shown these arrest warrants when you were arrested? |
| [Bryant]: | No, I wasn't. |
| [Counsel]: | Are you aware of a search warrant that contained your name? |
| [Bryant]: | No, I wasn't, until recently. |
| [Counsel]: | Was the search warrant presented to you at 3:00 p.m. when you were arrested? |
| [Bryant]: | No. |

No other witness or evidence was presented to the trial court. Bryant's counsel argued the following:

5

The evidence presented is the evidence in the search warrant. The search warrant was stamped at 3:45 p.m., your Honor.

The evidence also presented is, if the Court may take judicial notice of the officer's complaint, the officer's complaint by Mr. Garcia, that the arrest was executed at 1500 hours, which is 3:00 p.m., which is well before that search warrant was signed by the magistrate, your Honor; and that's fruits of the poison[ous] tree to search the safe. That's protected by the Fourth Amendment, your Honor.

Whether or not my client has an extensive history, a protective sweep does not involve the search of a safe. The smell of unburned marijuana, your Honor, does not involve exigency in the search of the safe, specifically in the search warrant that was made retroactively. Forty-five minutes while police are at the scene, your Honor, is unacceptable for the Fourth Amendment going forward, your Honor.

The State responded that Bryant had put forth no evidence to support quashing the search warrant. The trial court orally denied Bryant's suppression motion, having pronounced the following:

For the Court to go outside the four corners of the affidavits in the search warrants, the Court would have to make a determination that there was some sort of false statement made in the search warrants affidavits.

At this time, based on the testimony that was presented, the defendant has not presented any type of evidence demonstrating that there was any false or misleading allegations in the affidavits, in the search warrant, or the arrest warrants.

Therefore, . . . [Bryant's] [m]otion to [s]uppress . . . [is] denied.

The trial court later entered findings of fact and conclusions of law pertaining to its denial of Bryant's suppression motion.

A.      **Standard of Review & Applicable Law**

"[A] pretrial motion to suppress evidence is nothing more than a specialized objection to the admissibility of that evidence." *Black v. State*, 362 S.W.3d 626, 633 (Tex.

6

Crim. App. 2012) (cleaned up). We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Id.* Our deferential review of the trial court's factual determinations also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381–82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Generally, for a search or seizure to be deemed reasonable, a warrant must be granted beforehand. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999).

No search warrant may legally issue unless it is based on probable cause that evidence of a crime will be found at the place to be searched. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 1.06. Probable cause exists

7

for Fourth Amendment purposes when, "under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location." *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *see Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). There must be "a sufficient nexus between criminal activity, the things to be seized, and the place to be searched." *Bonds*, 403 S.W.3d at 873.

When reviewing a magistrate's decision to issue a warrant, appellate courts apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). "This is a flexible, non[-]demanding standard." *Duarte*, 389 S.W.3d at 354. The duty of reviewing courts is to ensure a magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* Reviewing courts must give great deference to a magistrate's probable cause determination, including a magistrate's implicit finding. *McLain*, 337 S.W.3d at 271–72. Even in close cases, reviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process. *Duarte*, 389 S.W.3d at 354. When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Reviewing courts should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner. *Id.* at 61 n.25; *McLain*, 337 S.W.3d at 272. In determining whether an affidavit provides probable cause to support a search warrant, an issuing court and a reviewing court are constrained to the four corners of the

8

affidavit. *McLain*, 337 S.W.3d at 271.

When, as here, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Lerma*, 543 S.W.3d at 190; *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

## B. Sufficiency of Supporting Affidavit

In his first sub-issue, Bryant argues that "[t]he [search] warrant was illegally issued because[ ]the supporting affidavit does not reflect sufficient probable cause to justify the issuance of a search warrant." In its findings of fact and conclusions of law, the trial court stated:

> The Court finds that a valid search warrant was issued on December 5, 2018 at 3:45 p.m.
>
> . . . .
>
> [Bryant] did not specifically state that the warrant lacked probable cause. However, [Bryant] alleged that the warrant is "not valid" and there is "nothing linking up" [Bryant] to a safe in the apartment searched. The Court finds that [Bryant's] argument is that the affidavit does not have sufficient probable cause to search the residence and any container located at the apartment. Probable cause is sufficient to support a search warrant if the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom justify the magistrate's conclusion that the object of the search is probably on the premises at the time of the issuance of the warrant.

. . . .

After reviewing the four corners of the affidavit the Court finds that there was probable cause to search the residence of [Bryant].

"The threshold issue in every Fourth Amendment analysis is whether a particular government action constitutes a 'search' or 'seizure' within the meaning of the Amendment." *Sims v. State*, 569 S.W.3d 634, 643 (Tex. Crim. App. 2019). The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (cleaned up). In addition, "[i]ndividuals have a reasonable expectation of privacy in the contents of closed containers." *Salinas v. State*, 625 S.W.3d 203, 212 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (cleaned up). Consequently, Fourth Amendment protections generally require the State to obtain a search warrant supported by probable cause before acquiring the contents of closed containers, such as the locked safe involved in this case. *See United States v. Ross*, 456 U.S. 798, 822–23 (1982) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view.").

Considering the four corners of the affidavit, we conclude that the affidavit contains sufficient particularized facts to have allowed the magistrate a substantial basis to determine probable cause existed for a warrant to search Bryant's home. *See Duarte*, 389 S.W.3d at 354. The affidavit describes that VPD officers noticed an odor of fresh unburnt marijuana when they entered Bryant's apartment to execute two arrest warrants. In addition, the affidavit also describes that VPD officers knew Bryant to be involved in the manufacture, delivery, storage, and sale of illegal narcotics through numerous prior

investigations. The affidavit contains a sufficient nexus between criminal activity—the possession of illegal narcotics and contraband, the things to be seized, and the place to be searched. *See Bonds*, 403 S.W.3d at 873.

Bryant further argues, within this sub-issue, that the "warrant lacked reliability due to the time it was executed versus the time of the search." There was no evidence presented at the suppression hearing establishing that VPD officers executed their search prior to obtaining the signed search warrant. We overrule this sub-issue.

## C.      Scope of Search Warrant

In his next sub-issue, Bryant argues that "the safe searched by the State was enclosed property not included in the search warrant and as such the search was unlawful." In its findings of fact and conclusions of law, the trial court stated:

> The Court finds that the warrant authorized a search of places where contraband could be stored or found. The warrant specifically authorizes the search and seizure of "contraband," "criminal instruments," "materials used in packing and distribution of illegal controlled substances" and "currency." The Court further finds that a "safe" does meet the description of a place where contraband could be stored or found. The Court finds that it is reasonable to believe that the safe may fall under the definition(s) of a criminal instrument or a place where either contraband or currency could be stored. Therefore, though not specifically listed, the Court finds it is reasonable to believe that members of law enforcement were authorized to seize and search the safe located at the residence.

In this case, the search warrant expressly stated 1603 Azalea St Apt #C2 as the place to be searched and included a written physical description and location of the building, including Bryant's specific unit within it. The search warrant also expressly listed possession of marijuana as the suspected criminal activity and authorized the seizure of "[c]ontraband," "[c]riminal instruments," and "[i]mplements, instruments, and/or

11

instrumentalities tending to connect the suspects to the alleged offense(s), suspected location(s), any seized contraband and all items specifically named within the affidavit." Furthermore, the search warrant specifically authorized seizure of a laundry-list of items, including, among other things: "[i]llegal narcotics or controlled substances"; "[p]araphernalia used to manufacture controlled substances or consume controlled substances"; "US Currency"; "[c]ellular phones"; "[m]aterials used in packaging, cutting, weighing and distribution of illegal controlled substances"; and "illegally possessed firearms."

The term "safe" is not expressly written in the search warrant. However, we agree with the reasoning of the trial court—a safe is a place where items authorized to be seized by the search warrant, i.e., illegal narcotics and controlled substances, contraband, or currency, could be found. Based on the totality of the circumstances, we conclude that it was reasonable for officers to believe that the safe might contain items authorized to be seized by the search warrant. *See Ross*, 456 U.S. at 820–21 ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. . . . When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home . . . must give way to the interest in the prompt and efficient completion of the task at hand."); *Marsh v. State*, 115

S.W.3d 709, 714 (Tex. App.—Austin, 2003 pet ref'd.) (holding that items authorized to be searched for and seized by a search warrant could be concealed in a safe found at the scene and then holding that officers did not engage in an exploratory search unauthorized by a search warrant when opening the safe); *$19,070.00 v. State*, 869 S.W.2d 608, 613 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (holding that search of safe and seizure of currency found therein was not outside of scope of search warrant for controlled substances). Because VPD officers could lawfully search the safe pursuant to the search warrant, the State was not required to obtain a separate search warrant specifically authorizing the search of the safe. We overrule this sub-issue.

## D. Key to the Safe Obtained from Bryant's "Jail Property"

In his final sub-issue, Bryant argues that "the key that opened the safe was improperly seized from [Bryant's] property secured at the jail without a warrant." In its findings of fact and conclusions of law, the trial court stated:

> The safe containing the contraband was opened by a key the defendant possessed when arrested. The key was removed from the defendant at the time he was processed at the jail and placed in a jail property room. The Court finds said key was placed in the defendant's property at the jail. The Court further finds that the key was removed from the defendant's possession when the key was placed in the jail property room. Once the key was placed in the jail property room, the defendant no longer had possession of the key. A member of the police department removed the key from the jail property room and took the key to the location of the apartment where the search was being conducted. The key was used at the location of the search to open the safe.

> The defendant argues that he had an expectation of privacy with regard to his property stored at the jail property room. An accused's expectation of privacy where he [sic]: (a) by his conduct, he exhibited an actual subjective expectation of privacy, a genuine intention to preserve something as private; and (b) that circumstances existed under which

13

society was prepared to recognize his subjective expectation as objectively reasonable. *Villarreal v. State*, 935 S.W.2d 134 (Tex. Crim. App. 1996)[] (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979)). *See also Oles v. State*, 993 S.W.2d 103, 108 (Tex. Crim. App. 1999).

The Court finds that law enforcement was authorized to remove the key from the jail property room and use it to open the safe because the defendant did not have an expectation of privacy when the key was placed in the jail property room. An individual in custody does not have an expectation of privacy for property held for them at jail. *Oles v. State*, 993 S.W.2d 103 (Tex. Crim. App. 1999). Therefore, law enforcement did not need to secure a warrant to search the defendant's possessions being held at the jail property room.

We first conclude that the evidence, when viewed in the light most favorable to the trial court's ruling, supports its factual findings. *See Kelly*, 204 S.W.3d at 818. Here, the record establishes that during execution of the search warrant at Bryant's apartment, VPD officers found a safe and unlocked it with keys that had been found in Bryant's pocket after his arrest.

The keys were obtained after a lawful search incident to arrest. *See State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014) ("Under the Fourth Amendment, police officers may search an arrestee incident to a lawful arrest."); *State v. Drury*, 560 S.W.3d 752, 755 (Tex. App.—Fort Worth, 2018, pet ref'd). In his brief, Bryant claims that he had an expectation of privacy in the seized keys, and concludes, without further argument, that the trial court's judgment should be reversed. Bryant's argument implies that VPD officers' removal of the keys from the jail property room constitutes a second "seizure," cites no authority supporting that proposition, and we have found none. However, assuming without deciding that the officers' actions in removing the keys from

14

the property room constituted a "seizure," we conclude those actions were reasonable. *See Riley*, 573 U.S. at 381–82. ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'").

"The Fourth Amendment does not prohibit all seizures, but only those that are unreasonable." *State v. Sanchez*, 856 S.W.2d 166, 168 (Tex. Crim. App. 1993). Whether a seizure is reasonable "depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). "The Fourth Amendment imposes limits on search and seizure powers in order to prevent law enforcement officials from arbitrary and oppressive interference with an individual's privacy and personal security." *Garcia v. State*, 853 S.W.2d 157, 159 (Tex. App.—Corpus Christi–Edinburg, 1993, pet. ref'd) (citing *United States* v. *Martinez–Fuerte*, 428 U.S. 543, 555 (1976)). "Thus, the permissibility of a particular law enforcement practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)).

"The government has a legitimate interest in identification and storage of an inmate's property." *Alford v. State*, 358 S.W.3d 647, 661 (Tex. Crim. App. 2012). "Accordingly, the Texas Administrative Code requires that '[u]pon intake, a file on each inmate shall be established,' which 'shall include inmate property inventory.'" *Id.* (quoting 37 TEX. ADMIN. CODE ANN. § 265.4(a)(11)). "The Code then provides that '[t]he receiving officer shall carefully record and store the inmate's property as it is taken.'" *Id.* (quoting 37 TEX. ADMIN. CODE ANN. § 265.10). "The Supreme Court has also held, in the Fourth

15

Amendment context, that 'it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect.'" *Id.* (quoting *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983)). However, the Supreme Court has also noted that "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Lafayette*, 462 U.S. at 647. We also note that "'arrestees do retain some level of privacy interest in the personal effects or belongings taken from them incident to their arrest,' but . . . there is a lesser subjective expectation of privacy and a lesser societal expectation of privacy in inventoried property." *Granville*, 423 S.W.3d at 411 (quoting *Oles v. State*, 993 S.W.2d 103, 108 (Tex. Crim. App. 1999)).

We have found no case analyzing the reasonableness of a police officer's retrieval of lawfully seized keys from an arrestee's "jail property" and the subsequent use of those keys to open a closed container found in the arrestee's residence pursuant to a valid search warrant. However, in the context of automobile inventory searches, courts have upheld an officer's use of seized keys to open a closed container in a vehicle. *See 1975 Chevrolet v. State*, 801 S.W.2d 565, 566–67 (Tex. App.—Dallas 1990, writ denied) (upholding the inventory search of a closed container found in a vehicle because the police department's policy was to open locked containers if the police had access to the keys of the container); *see also Abulughod v. State*, No. 2-06-102-CR, 2007 WL 2084255, at *2 (Tex. App.—Fort Worth, July 19, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that the seizure of a key from the appellant's person was lawful, then

16

holding that an officer's use of the key to open the trunk of the appellant's vehicle was not fruit of the poisonous tree). Though not directly analogous, we find *1975 Chevrolet* and *Abulughod* instructive as these cases demonstrate that the use of a key to open a closed container found in a vehicle is proper when police officers lawfully seized or had lawful access to a key and vehicle. *See 1975 Chevrolet*, 801 S.W.2d at 566–67; *see also Abulughod*, 2007 WL 2084255, at *2.

The record demonstrates that the seized keys were set aside as "jail property" after Bryant's arrest, as opposed to being tagged as evidence. The seized keys were retrieved from Bryant's "jail property" only after officers discovered the safe during execution of the search warrant—the point where the nexus between the seized keys and the offense for which Bryant was suspected of committing under the search warrant, possession of marijuana, became apparent to officers. Ramirez testified regarding other means in which officers could open a safe during execution of a search warrant—"[w]e can break it with a . . . hammer, halligan, a pry bar, and damage the property." However, Ramirez also testified that using keys was a more common way to open a safe and that the seized keys were used to open Bryant's safe in order to "not . . . damage the property." Ramirez indicated that the keys were not returned to Bryant's "jail property" but stated "I believe we tagged [the keys] . . . into evidence as safekeeping."

Given that VPD officers lawfully possessed the seized keys after conducting a search incident to arrest and could lawfully search the safe pursuant to a valid search warrant, we hold that the officers' action in retrieving the seized keys from Bryant's "jail property" and using the seized keys to open the safe was not unreasonable. *See Riley*,

573 U.S. at 381–82; *see also 1975 Chevrolet*, 801 S.W.2d at 566–67; *Abulughod*, 2007 WL 2084255, at *2. Thus, the trial court did not abuse its discretion in denying Bryant's motion to suppress. *See Lerma*, 543 S.W.3d at 190; *Story*, 445 S.W.3d at 732. We overrule this sub-issue and the entirety of Bryant's first issue.

### III.     DISCOVERY REQUEST

In his second issue, Bryant argues that the trial court abused its discretion when it denied his discovery request for certain original photographs.

During a pretrial hearing on July 14, 2021, five days before trial commenced, Bryant orally requested a continuance in order to obtain, among other things, photographs of the crime scene. The trial court suggested "[i]f you believe that that evidence exists, then you can issue a subpoena for whoever that person is that would contain that evidence." The State informed the trial court that discovery was made available to Bryant on March 15, 2021, which included a "DVD with photographs contained on it." Bryant did not contest the State's statement regarding discovery. Instead, Bryant urged that he could not properly prepare for trial without receiving certain evidence:

| | |
|---|---|
| [Bryant]: | The evidence is the—the camera that Officer Ramirez took, the digital camera used by VPD. He took pictures, 51 photos of the inside of the apartment and of all the evidence that he allegedly found inside the safe. Okay. Those pictures was [sic] uploaded to the PDF file, but it's not showing the timestamp and the timeframe that he took those pictures, because the—the way they're angled and the way they were taken and uploaded on to the website. But the original pictures should show the automatic date and timestamp. |

18

| | |
|---|---|
| [The Court]: | There[ are] certain requirements that the State needs to comply with before those pictures would be admitted into evidence. If the State is not—is unable to comply with those predicate questions, then those pictures would be inadmissible. |
| [Bryant]: | Okay. Because he's trying to—he's—he has the PDF file photos to be used against me. I want the originals, because that's got something to deal with the—with what I'm claiming is illegal search and seizure. |
| [The Court]: | All right. Your attorney can subpoena whatever photos that you're—that it is that you're requesting. |
| . . . . | |
| [The Court]: | Whatever the information is that you're requesting, your attorney can ask for it. I don't know what that—what the evidence is for your case. |
| [Bryant]: | All right. |
| [The Court]: | If you're alleging that the officer manipulated photographs or did not—or wasn't truthful with regards to testimony that he may have presented during the search of the residence, then those allegations could be asked about during cross-examination of the officer. That could consequently cause evidence to be inadmissible and your attorney would have to pursue that line of questioning throughout the trial. I don't know what—if that evidence exists or not, because I'm not privy as to what the facts of this case are. |

On July 16, 2021, three days before trial commenced, Bryant filed his "Motion For Access to Physical Evidence" which alleged that the State possessed, among other

19

things, "[t]he 51 original copies of pictures with time stamps . . . of the searched contents of the . . . [s]afe searched . . . during execution of the search warrant of [Bryant's] alleged home on December 5, 2018," and requested that these photographs be made available to him before trial. The record contains no oral or written order ruling on this motion prior to trial.

## A.      Standard of Review & Applicable Law

A trial court's ruling on pretrial discovery is reviewed for an abuse of discretion. *Branum v. State*, 535 S.W.3d 217, 224 (Tex. App.—Fort Worth 2017, no pet.).

Article 39.14(a) of the code of criminal procedure requires the State, upon timely request, to produce and permit the inspection and electronic duplication of "material" evidence by the defense. TEX. CODE CRIM. PROC ANN. art. 39.14(a); *see Watkins v. State*, 619 S.W.3d 265, 290 (Tex. Crim. App. 2021) (defining "material" under Article 39.14 as "having a logical connection to a consequential fact" and "synonymous with 'relevant'"). Article 39.14(a) also provides that the State "may provide to the defendant electronic duplicates of any documents or other information described by this article." TEX. CODE CRIM. PROC ANN. art. 39.14(a) The State has an additional, affirmative duty to disclose "exculpatory, impeachment, or mitigating" materials that "tend[ ] to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *Id.* art. 39.14(h).

## B.      Discussion

Bryant argues that the photographs he requested constituted material evidence and that the State's failure to provide him the requested photographs violated Article

39.14. *See id.* at 39.14(a). Here, the trial court implicitly denied Bryant's request to compel the State to produce the original photographs.

We first note that the record establishes that photographs of the contents of the safe were made available to Bryant by the State. Bryant himself indicated to the trial court that he had received them, but nevertheless alleged that the photographs he had received were "not showing the timestamp and the timeframe [of when Ramirez] took those pictures" and suggested, without evidence, that "the original pictures should show the automatic date and timestamp." The photographs were admitted at trial as State's Exhibit 1, a DVD disc which had a PDF file containing all the photographs. At the pretrial hearing, Bryant referred to the photographs he had received from the State as the "PDF file photos." Under Article 39.14(a), the State "may provide to the defendant electronic duplicates of any documents or other information described by this article." TEX. CODE CRIM. PROC ANN. art. 39.14(a). We find that the PDF file provided to Bryant was an "electronic duplicate" properly allowed under Article 39.14(a). *Id.* In addition, nothing in the record establishes that the content of the photographs was manipulated or altered in any way by the State. We also note that there is nothing in the record demonstrating what the alleged withheld evidence would have shown regarding Bryant's contention that officers illegally searched his apartment before obtaining a search warrant. Accordingly, the trial court did not err in implicitly denying Bryant's discovery request. *See Branum*, 535 S.W.3d at 224. We overrule Bryant's second issue.

## IV.    CONTINUANCE

In his third issue, Bryant argues that the trial court abused its discretion when it

denied his oral motion for continuance. Motions for continuance in criminal proceedings must be in writing and set forth sufficient cause for the continuance. *See* TEX. CODE CRIM. PROC. ANN. art. 29.03. Moreover, "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. A motion for continuance that is not sworn preserves nothing for appellate review. *See Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).

Here, nothing in the record demonstrates that Bryant filed a written and sworn motion for continuance as required by the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 29.03. Therefore, Bryant has[2] preserved nothing for our review. *See Anderson*, 301 S.W.3d at 279. We overrule Bryant's third issue.

## V. USE OF PRESENTATION SLIDE DURING VOIR DIRE AND OPENING STATEMENTS

In his fourth issue, Bryant argues that the trial court abused its discretion in overruling his objection to the State's use of a presentation slide during voir dire which contained an image of a fictional violent drug dealer from a television show. However, in his brief, Bryant does not present any argument or cite pertinent legal authority related to this issue. *See* TEX. R. APP. P. 38.1(i) ("[A] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Therefore, Bryant has waived this issue through inadequate briefing. *See id.*; *Wolfe v. State*, 509 S.W.3d 325, 342–43 (Tex. Crim. App. 2017) (noting that we have no obligation to make an appellant's argument for him); *Lucio v. State*, 353 S.W.3d 873, 877–

---

[2] The record demonstrates that Bryant made an oral motion for continuance at the July 14, 2021 pretrial hearing, as well as on the first day of his trial. Both oral motions were orally denied by the trial court.

78 (Tex. Crim. App. 2011) (finding a point of error inadequately briefed where the brief contains a single-sentence assertion and is unaccompanied by any other argument or authorities).

We note that in his brief, as part of his fourth issue, Bryant raises an issue which is related to but distinct from the voir dire issue he inadequately briefed. Bryant argues that the State made improper *opening statements* "equating [Bryant] to a violent fictional drug dealer" through the State's use of the image. In order for an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. TEX. R. APP. P. 33.1(a). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Failure to properly object and preserve a complaint waives any appellate review of the matter. *See Vidaurri v. State*, 49 S.W.3d 880, 885–86 (Tex. Crim. App. 2001). Nothing in the record indicates that the State used the complained-of image during its opening statements, nor is there an objection by Bryant related to such alleged use. Therefore, Bryant has not preserved this issue on appeal and has waived any appellate review of the matter. TEX. R. APP. P. 33.1(a); *see Vidaurri*, 49 S.W.3d at 885–86. We overrule Bryant's fourth issue.

## VI.    STATE'S OPENING STATEMENT

In his fifth issue, Bryant argues that the trial court abused its discretion in denying his objection to the State's reference to Leslie Lamar during its opening statement.

**A.    Standard of Review & Applicable Law**

We review a trial court's rulings on opening statements for an abuse of discretion. *See Donnell v. State*, 191 S.W.3d 864, 867 (Tex. App.—Waco 2006, no pet.). It is an abuse of discretion only if the trial court's ruling is outside the "zone of reasonable disagreement." *Id.* (*quoting Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). A trial court's ruling should be upheld so long as it is correct under any valid legal theory, regardless of whether the reason was argued before the court. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

A prosecutor's opening statement is authorized by article 36.01. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3). The opening statement should inform the jury of the nature of the accusation and the facts which are expected to be proved by the State. *See id.*; *Taylor v.* State, 947 S.W.2d 698, 706 (Tex. App.—Fort Worth 1997, pet. ref'd). However, an opening statement in which a party engages in jury argument, rather than stating to the jury the nature of the issues and the evidence that the party expects to be produced, is improper. *See Hullaby v. State*, 911 S.W.2d 921, 927 (Tex. App.—Fort Worth 1995, pet. ref'd). In reviewing whether improper comments by the prosecutor during opening statement constitute reversible error, an appellate court must determine whether, when viewed in conjunction with the record as a whole, the statement was so prejudicial as to deny appellant a fair trial. *Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App.—San Antonio 1996, no pet.).

**B.    Discussion**

During the State's opening statement to the jury, the prosecutor spoke about the

24

protective sweep that VPD officers conducted after gaining entry to Bryant's apartment and referenced Lamar as a person whom officers knew to be Bryant's associate in the sale of drugs. Bryant objected to the State's reference to Lamar:

| [The State]: | They conducted a protective sweep of the apartment for their own officer safety, which they're also allowed to do. You'll hear the officers knew the defendant to sell drugs with another individual by the name of Leslie Lamar. And they had a female romantic partner they knew him to associate with and aren't just going to take the drug dealer's word for it that nobody else is in the house. |
|---|---|
| [Bryant]: | Objection, Your Honor. That's irrelevant. |
| [The Court]: | That's what? |
| [Bryant]: | Mr. Lamar isn't relevant to this case at hand, Your Honor. He's not even in any report here, Your Honor. |
| [The Court]: | Objection is overruled. This is opening statements. |

In his brief, Bryant argues that in referencing Lamar, the State "sought to introduce additional accusations" and "introduced evidence during its opening [that the State] did not intend to argue at trial." Bryant further argues that "an opening statement in which the prosecutor engages in jury argument, rather than stating to the jury the nature of the accusations and the evidence that the prosecution expects to produce, is improper."

However, Bryant's only trial objection to the State's reference to Lamar during its opening statement regarded relevance. Bryant did not object on any of the grounds he now raises on appeal—that the State introduced evidence during its opening that the

25

State "did not expect to produce," "did not intend to argue at trial," and engaged in improper jury argument. His trial objections therefore do not comport with his complaints on appeal; thus, he has not preserved his fifth issue for review. *See Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) (concluding defendant's claim on appeal must comport with objection preserved in trial court to be preserved for appellate review); *Brock v. State*, 495 S.W.3d 1, 12 (Tex. App.—Waco 2016, pet. ref'd) ("Brock objected that the message had not been properly authenticated. Because Brock did not make a specific objection under Texas Rule of Evidence 403 at the time the evidence was introduced, we conclude that Brock's complaint on appeal does not comport with his trial-court objection."); *see also* TEX. R. APP. P. 33.1(a). We overrule Bryant's fifth issue.

### VII. ADMISSION OF EVIDENCE AND TESTIMONY

In his sixth issue, Bryant argues that the trial court abused its discretion when it admitted various evidence and testimony. As part of his sixth issue, Bryant argues four sub-issues that we address separately below.

### A. Standard of Review

We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided

26

that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

**B.      Discussion**

**1.      State's Exhibits 15–17**

In his first sub-issue, Bryant claims that the trial court abused its discretion when it admitted State's Exhibits 15–17 into evidence. State's Exhibit 15 was a copy of a written lease agreement between Crossroads, Bryant, and Maria Moreno; State's Exhibit 16 was a copy of Bryant's driver's license; and State's Exhibit 17 was a copy of Moreno's identification card. At trial, Bryant objected to the admission of these exhibits on the grounds that he had not been provided the evidence prior to trial. The State informed the court that the evidence was newly received and that there was no opportunity to present it to the defense. The trial court took the objection under advisement. Bryant then challenged the authenticity of the documents. The trial court overruled Bryant's authenticity objection and halted proceedings for a lunch recess. Bryant was given an opportunity to review the exhibits over the lunch recess. Once proceedings resumed after the lunch recess, Bryant informed the trial court that he did not have any additional objections to the documents and the trial court announced that "The objection [in ]regards to 39.14, the rules of discovery, is overruled."

Bryant principally argues on appeal that the State was required to timely produce

27

the three exhibits pursuant to Article 39.14, and therefore, the exhibits should not have been admitted as evidence.[3] *See* TEX. CODE CRIM. PROC ANN. art. 39.14. Article 39.14(a) requires the State, "as soon as practicable" after receiving a timely request, to produce and permit the inspection and electronic duplication of "material" evidence by the defense. *Id.* § 39.14(a); *see Watkins*, 619 S.W.3d at 290. Arguably, the record demonstrates that the State did not produce the exhibits "as soon as practicable"; however, assuming without deciding that the State violated Article 39.14, we find that Bryant's substantial rights were unaffected.

"[W]hen only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis . . . ." *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005). Rule 44.2(b) requires reviewing courts to disregard any non-constitutional error that does not affect appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Williamson v. State*, No. 04-20-00268-CR, 2021 WL 4976326, at *3–4 (Tex. App.—San Antonio May 25, 2022, writ denied) (applying Rule 44.2(b) harm analysis to Article 39.14 violation); *Branum*, 535 S.W.3d at 225–26 (same); *Ziegler v. State*, No. 04-15-00559-CR, 2016 WL 5795208, at *2 (Tex. App.—San Antonio Oct. 5, 2016, no pet.) (mem. op., not designated for publication) (same).

Here, the record indicates that Bryant had about an hour to inspect the documents during the lunch recess. Bryant did not assert to the trial court, nor here on appeal, that

---

[3] Bryant also argues that the trial court's ruling violated his rights under Article I, Section 10 of the Texas constitution, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; however, Bryant did not object to State's Exhibits 15–17 on those basis. Therefore, we conclude that Bryant has failed to preserve those claims for our review. *See* Tex. R. App. P. 33.1(a)(1)(A); *Vidaurri*, 49 S.W.3d at 885–86.

the time he had to inspect the complained-of exhibits was inadequate. It is not evident how the tardy revelation of the exhibits' role in the State's case substantially impaired Bryant's actual defense posture at trial, nor does Bryant explain how his defensive posture could have materially improved had he been alerted to the significance of the exhibits earlier. [4] *See* TEX. R. APP. P. 44.2(b) (stating that non-constitutional error which does not affect substantial rights must be disregarded). Given the facts of this case, we cannot say the trial court's admission of the exhibits into evidence was "clearly wrong," arbitrary or unreasonable. *See Lopez*, 86 S.W.3d at 230; *Mechler*, 153 S.W.3d at 439. We overrule this sub-issue.

### 2.    Admission of Photos

In his next sub-issue, Bryant claims that the trial court abused its discretion when it admitted State's Exhibit 1, a DVD of photographs depicting Bryant's apartment and the contents of the safe.

In his brief, Bryant argues that "[t]he photographs offered as evidence as State's Exhibit 1 were not the originals of the photographs sought." Bryant also claims that it was error for the trial court to deny his request to "review the original, time-stamped photographs to those offered as State's Exhibit 1 to compare them." Under the Texas Rules of Evidence, "[a]n original . . . photograph is required in order to prove its content unless these rules or other law provides otherwise." TEX. R. EVID. 1002. However, "[a]

---

[4] Arguably the significance of the complained-of exhibits was that they were documents showing where Bryant lived. Bryant illuminates no other significance to these exhibits in his brief and we note that Ramirez's and Garcia's testimony established that Bryant lived at Crossroads prior to admission of the complained-of exhibits. We also note that Bryant did not object to State's Exhibits 15-17 on the basis that said exhibits were "needlessly" cumulative under Rule 403. *See* TEX. R. EVID. 403.

duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." TEX. R. EVID. 1003. We construe Bryant's claim as an argument that State's Exhibit 1 was not sufficiently authenticated. *See* TEX. R. EVID. 901(a).

Rule 901(a) of the Texas Rules of Evidence provides that for a party to satisfy the requirement of authenticating or identifying an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Rule 901(b) "does not erect a particularly high hurdle" for authentication, *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.), and provides a nonexclusive list of methods for authenticating evidence. TEX. R. EVID. 901(b). "Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *see also Butler v. State*, 459 S.W.3d 595, 602 (Tex. Crim. App. 2015); *Mata v. State*, 517 S.W.3d 257, 266 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd).

Moreover, under the rules of evidence, the trial court need not be persuaded that the proffered evidence is authentic. *See* TEX. R. EVID. 104(a); *Tienda*, 358 S.W.3d at 638. Rather, the preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a determination by a reasonable jury that the proffered evidence is authentic. *Tienda*, 358 S.W.3d at 638. The proponent of evidence need not rule out all possibilities inconsistent with authenticity,

30

nor must he prove beyond any doubt that the evidence is what it purports to be. *See Campbell*, 382 S.W.3d at 548; *see also Segovia v. State*, 467 S.W.3d 545, 551 (Tex. App.—San Antonio 2015, pet. ref'd). "The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007); *Mitchell v. State*, 419 S.W.3d 655, 659 (Tex. App.—San Antonio 2013, pet. ref'd).

Prior to admission of State's Exhibit 1 and outside the presence of the jury, Bryant conducted a voir dire examination of Ramirez regarding the photographs. During the voir dire examination, Ramirez testified that he had taken the photos with his work phone, and he then transferred the photos from his work phone to his work computer using a USB cord. The following colloquy occurred:

| [Bryant]: | Should this have digital time stamps there? |
| [Ramirez]: | Yes, sir. |
| [Bryant]: | Would they be made by the computer or the camera? |
| [Ramirez]: | I'm not—I can't answer that question. |
| [Bryant]: | No? Okay. Does your camera usually give you a time stamp when you take pictures? |
| [Ramirez]: | I don't check it to tell you that. |
| [Bryant]: | You don't check it? |
| [Ramirez]: | No. |
| [Bryant]: | Have you ever checked it to give you a time |

31

stamp?

[Ramirez]:                    I'm sure I have, yes, sir.

When Bryant asked "[w]ere those photos downloaded from the phone and then sent to this CD/DVD?", Ramirez replied: "[The p]hotos were downloaded from my phone to the computer. I don't—without seeing what's on that disc, I can't answer you for sure." Ramirez further testified that he had seen the photos after he took them and had seen them after the photos were transferred to his computer; that the photos were downloaded from the phone to a computer and stored in a drive; and that the photos stored on the computer were "originals." After Bryant finished his examination, he requested that the "original photographs" be produced to authenticate State's Exhibit 1 "[b]ased on no time stamps"—which we construe as an objection to State's Exhibit 1's authencity. The trial court asked Bryant "[s]o you want [Ramirez] to produce the original photographs that were—that are in his phone?", and Bryant replied "Yes, Your Honor." The trial court asked Ramirez "[d]o you still have those?", and Ramirez replied, "No, sir, I do not." The trial court denied Bryant's request. Bryant made no further arguments. The next day, in the presence of the jury, the trial court announced that Bryant's objection to State's Exhibit 1 was overruled and that the exhibit was admitted.

Here, Ramirez testified as the State's sponsoring witness. Prior to admission of State's Exhibit 1, Ramirez testified that he recognized the exhibit as "photos from that day" because "[i]t has the case number to our investigation and is labeled 'photos.'" Ramirez acknowledged that the photos were ones he took himself inside Bryant's residence during execution of the search warrant, and affirmed that the photos had not

32

been altered or tampered with in any way. Such testimony is sufficient to support a determination by a reasonable jury that the proffered evidence is authentic. *See Tienda*, 358 S.W.3d at 638.

In his brief, Bryant argues that the "original photographs" contained "time-stamped information critical to the defense"—re-urging much of the same arguments from his second issue regarding his discovery request, which we have already rejected. Though Ramirez testified that the original photographs "should" contain digital time stamps, his subsequent testimony otherwise indicated that he was not certain. As we discussed in Bryant's second issue, nothing in the record otherwise establishes that the content of the photographs was manipulated or altered in any way by the State.

To the extent that Bryant impliedly argues against the authenticity of State's Exhibit 1 due to lack of time stamps, we note that the State "need [not] 'rule out all possibilities inconsistent with authenticity,'" nor "prove beyond any doubt that the evidence is what it purports to be." *See Campbell*, 382 S.W.3d at 549; *Segovia*, 467 S.W.3d at 551; *see also* TEX. R. EVID. 1003. To the extent that Bryant impliedly argues that admission of duplicates was unfair due to the lack of time stamps, we note again, as we did in discussing Bryant's second issue, that there is no evidence demonstrating what the alleged time stamps would have shown. *See* TEX. R. EVID. 1003. Thus, Bryant has not shown that admission of State's Exhibit 1 was unfair. Given the circumstances of this case, we cannot say the trial court's admission of State's Exhibit 1 was "clearly wrong," arbitrary, or unreasonable.

*See Lopez*, 86 S.W.3d at 230; *Mechler*, 153 S.W.3d at 439. We overrule this sub-issue.[5]

### 3. Admission of Officer's Opinion Testimony

In his next sub-issue, Bryant claims that the trial court abused its discretion when it allowed "speculative testimony of a non-expert."

Bryant complains of two instances of what he terms "speculative testimony of a non-expert." In one instance, Bryant argues Ramirez "was allowed to speculate as to the chemical composition of various pills." Ramirez testified that, based on his training and experience, he believed the pills found in the safe to be furosemide and Adderall, for which he did not find a prescription. In the second instance, Bryant argues Ramirez "was allowed to speculate as to the chemical composition of various substances and beverages." Ramirez testified that two types of medicines were found in the safe that could be mixed with a beverage to "get a type of high." As to both instances, Bryant specifically argues that Ramirez was not designated or qualified as an expert of narcotic substances, and "[a]s a non-expert, that made his scientific analysis speculative."

With respect to his speculation objection, Bryant only objected after Ramirez answered the question. *See* TEX. R. EVID. 103 (requiring that objections be both timely and specific); TEX. R. APP. P. 33.1(a); *Dinkins v. State*, 894 S.W.2d 330, 335 (Tex. Crim. App. 1995) (providing that an objection should be made as soon as the grounds therefor

---

[5] Bryant additionally claims that the admission of State's Exhibit 1 was in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and "the protections afforded by *Brady v. Maryland*, 373 U.S. 83 (1963)." However, Bryant failed to object to the admission of State's Exhibit 1 on that basis. Therefore, Bryant did not preserve that issue on appeal and has waived any appellate review of the matter. TEX. R. APP. P. 33.1(a); *see also Vidaurri*, 49 S.W.3d at 885–86. In addition, Bryant's trial objections do not comport with his claim on appeal; therefore, he has not preserved this claim for review. *See Hallmark*, 541 S.W.3d at 171; *Brock*, 495 S.W.3d at 12; *Ybarra v. State*, 890 S.W.2d 98, 115 (Tex. App.—San Antonio 1995, writ denied).

34

become apparent). Bryant has shown no reason to justify the delay. *See Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App.1997) ("If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived."). Therefore, Bryant's speculation objections were untimely and improper. *See* TEX. R. EVID. 103; TEX. R. APP. P. 33.1(a).

Moreover, the record demonstrates that Bryant never objected on the basis that Ramirez did not qualify as an expert under Rule 702. *See* TEX. R. EVID. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). Furthermore, Bryant did not object to Ramirez's testimony as being improper lay opinion testimony under Rule 701. *See* TEX. R. EVID. 701; *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (holding officer's testimony regarding her identification of marihuana was admissible as a lay opinion); *Davis v. State*, 313 S.W.3d 317, 349 (Tex. Crim. App. 2010) (holding detective's testimony—regarding the rate of animal decay and a cat's time of death—was admissible as a lay opinion). Bryant's trial objections do not comport with his complaints on appeal; therefore, he has not preserved this sub-issue for review. *See Hallmark*, 541 S.W.3d at 171; *Brock*, 495 S.W.3d at 12; *Ybarra v. State*, 890 S.W.2d 98, 115 (Tex. App.—San Antonio 1995, writ denied), 890 S.W.2d at 115. We overrule this sub-issue.

35

## 4.   Extraneous Offense

In his final sub-issue, Bryant claims that the trial court abused its discretion when it allowed extraneous evidence of firearm possession.

On the first day of trial, after the indictment was read to the jury but before the State called its first witness, the State abandoned Count 3 outside the presence of the jury. After the State abandoned Count 3, it called Ramirez, its first witness, to testify. Ramirez testified that a firearm was found in Bryant's safe, and that possession of a firearm and narcotics was indicative of narcotics trafficking. Bryant did not object to this testimony. On the second day of trial, Ramirez testified regarding a picture of the firearm located in the safe and gave details about the firearm. Bryant objected, requesting that the trial court inform the jury that the gun charge had been dropped; however, the trial court informed Bryant that the jury would only be charged as to the remaining count against him.

Bryant argues that the objected-to testimony regarding the firearm was "for an offense that had already been abandoned by the State, its admission was prejudicial, not probative, and in general to make [Bryant] appear to the jury as a 'bad guy' rather than consider the evidence before them." *See* TEX. R. EVID. 403 (providing that evidence is inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence"); TEX. R. EVID. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The record

36

demonstrates that Bryant did not object to Ramirez's testimony about the firearm on the first day of trial and only did so once Ramirez testified about the firearm again on the second day of trial. Bryant has shown no reason justifying the delay; thus, his objection was untimely and waived. *See* TEX. R. EVID. 103; TEX. R. APP. P. 33.1(a); *see also Dinkins*, 894 S.W.2d at 335; *Lagrone*, 942 S.W.2d at 618; *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged."). We overrule this sub-issue and Bryant's entire sixth issue.

## VIII. MISTRIAL

In his seventh issue, Bryant argues that the trial court abused its discretion when it denied his motion for mistrial following a witness's characterization of him as a "known drug dealer."

During trial, Soto testified that he was the officer who wrote and signed the affidavit for the search warrant of Bryant's apartment. Soto testified that his probable cause came from "the very obvious odor of fresh unburnt marijuana coming from inside of the residence, along with the fact that [Bryant] is a known narcotics dealer." Bryant, after additional questions were asked of Soto, objected to Soto's characterization of him as a "known drug dealer." Outside the presence of the jury, the trial court ruled that Bryant's objection was untimely and waived. The trial court then asked "Is . . . [Bryant] requesting an instruction for the Court to have the jury disregard [the complained-of testimony]?" and Bryant stated "Yes, Your Honor." Bryant then suggested to the trial court that his objection was untimely because "the question was really fast" and asked that the objection be

37

preserved. The trial court reiterated that the objection was waived, and noted that Bryant's objection took place two questions past the complained-of testimony. The jury returned, and the trial court nevertheless instructed the jury to disregard Soto's statement:

[The Court]: All the jurors have taken a seat. Everyone may be seated. Ladies and gentlemen, the Court is instructing you to disregard the statement by the witness characterizing Mr. Bryant as a "known drug dealer."

Court will also instruct you that the law requires that you—at this time the defendant is presumed to be innocent unless guilt is established by legal evidence received before you in the trial of this case beyond a reasonable doubt.

After the trial court instructed the jury to disregard, Bryant made a request for a mistrial, which was denied by the trial court. Bryant now claims on appeal that the trial court ruling constituted an abuse of discretion.

## A. Standard of Review & Applicable Law

To preserve error, an appellant must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a); *see Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). In accordance with Rule 33.1, a motion for mistrial must be both timely and specific. *Griggs*, 213 S.W.3d at 927 (citing *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc)). A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *Id.* (citing *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App.1994) (en banc)).

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Ocon v.*

*State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.* (citing *Wead*, 129 S.W.3d at 129).

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon*, 284 S.W.3d at 884 (first citing *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); and then citing *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* (citing *Ladd*, 3 S.W.3d at 567). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.*

Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Id.* at 884–85 (citing *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). "Less drastic alternatives include instructing the jury 'to consider as evidence only the testimony and exhibits admitted through witnesses on the stand,' and, questioning the jury 'about the extent of any prejudice,' if instructions alone do not sufficiently cure the problem." *Id.* at 885 (citing *Arizona v. Washington*, 434 U.S. 497, 521–22 (1978) (White, J., dissenting)). "Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the

problem could have been cured by the less drastic alternative." *Id.* (citing *Young*, 137 S.W.3d at 70).

## B.    Discussion

In the instant case, we hold that Bryant's motion for mistrial was untimely and unpreserved. The grounds for Bryant's motion for mistrial first became apparent during Soto's testimony, but Bryant failed to object or move for mistrial until, as the trial court noted, two questions past the complained-of testimony. *See* TEX. R. APP. P. 33.1(a); *see Griggs*, 213 S.W.3d at 927 (quoting *Young*, 137 S.W.3d at 70) ("If a party delays [his] motion for mistrial, and by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection.").

Even if Bryant timely preserved his motion for mistrial, "a prompt instruction to disregard the testimony at issue . . . ordinarily will cure any prejudice arising from the testimony." *Ludwig v. State*, 428 S.W.3d 344, 350 (Tex. App.—Amarillo, 2014 no pet.) (citing *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)). Bryant does not suggest on appeal that residual prejudice remained after the trial court promptly instructed the jury to disregard the complained-of testimony. *See Ocon*, 284 S.W.3d at 884–85. ("Because it is an extreme remedy, a mistrial should be granted 'only when residual prejudice remains' after less drastic alternatives are explored."). In addition, we generally presume that the jury follows the trial court's instructions in the manner presented. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). The presumption is refutable, but the appellant

40

must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions. *Thrift*, 176 S.W.3d at 224. This is because "the degree of harm demonstrated by an appellant must be actual, not merely theoretical." *Bradshaw v. State*, 244 S.W.3d 490, 497–98 (Tex. App.—Texarkana 2007, pet. ref'd). Here, no such showing has been made. We overrule Bryant's seventh issue.

## IX.    CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
23rd day of February, 2023.

41