

# NUMBER 13-22-00222-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARANDA LIZETTE LONGORIA**
**A/K/A MARANDA LONGORIA,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

---

### On appeal from the 357th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Longoria

Appellant Maranda Lizette Longoria a/k/a/ Maranda Longoria was found guilty by a jury of seven offenses: failing to stop and render aid after an accident involving death, a second degree felony (Count I), *see* TEX. TRANSP. CODE ANN. § 550.021(a), (c)(1)(A); intoxication manslaughter, a second degree felony (Count II), *see* TEX. PENAL CODE ANN.

§ 49.08; two counts of intoxication assault, a third degree felony (Counts III and IV), *see id.* § 49.07; failing to stop and render aid after an accident involving injury, a felony punishable by imprisonment for up to five years (Count V), *see* TEX. TRANSP. CODE ANN. § 550.021(a), (c)(2); and two counts of failing to stop and render aid after an accident involving serious bodily injury, a third degree felony (Counts VI and VII), *see id.* § 550.021(a), (c)(1)(B). Appellant was sentenced to twenty years' imprisonment for Counts I and II, five years' imprisonment for Counts III and IV, two years' imprisonment for Count V, five years' imprisonment for Count VI, and six years' imprisonment for Count VII. The trial court ordered the sentences for Counts II, III, and IV to run consecutively, and the remaining sentences to run concurrently. By three issues, appellant claims (1) the trial court erroneously denied appellant's motion to suppress, (2) the evidence supporting her convictions was legally and factually insufficient, and (3) the trial court erroneously excluded certain evidence. We affirm.

## I. BACKGROUND

On May 18, 2020, shortly after 1:00 a.m., a black Ford Expedition crashed, rolled, and rested upside-down on the front lawn of Oak Hill Events Center in San Benito (Oak Hill), resulting in the death of J.C.,[1] appellant's nine-year-old daughter. Other occupants of the vehicle survived the crash, but suffered various injuries as a result of the accident. Merina, appellant's sister, was unconscious at the scene and fractured her spine resulting in paralysis from the waist down. K.L., Merina's five-year-old daughter, suffered a broken

---

[1] To protect the identity of the minor children, we refer to them by their initials. *See* TEX. R. APP. P. 9.8(a); *see also* TEX. CONST. art. 1, §30(a)(1) (providing that a crime victim has "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

leg. Emmanuel, Merina's boyfriend, suffered tissue damage on his chest and "road rash" on his right leg.

Bystanders Ricardo Cerda and his girlfriend arrived at the scene and attempted to render aid. Police officers received a call about the accident at 1:17 a.m. and arrived at the scene of the accident shortly thereafter. Emmanuel told Cerda and the officers that appellant was the driver, and they were headed to McAllen from South Padre Island. Emmanuel also advised officers that before the crash, Merina was in the front passenger seat, he and K.L. were in the back seat, and J.C. was in the back cargo area. Emmanuel told Cerda, in particular, that appellant was wearing an orange top. It is undisputed that appellant was not at the crash site upon arrival of the bystanders or officers.

Officers began searching for appellant and found her on the outskirts of the Oak Hill property, over five hundred feet away from the crash site, hiding behind a pile of bricks. Officers made contact with appellant, who appeared to have minimal injuries, was bare foot, and wearing an orange top. Officers also observed that appellant appeared to be intoxicated as she had slurred speech and emanated a strong scent of alcohol. Body worn camera footage was admitted into evidence which depicted appellant's initial interaction with officers. In the footage, an officer asked appellant how she ended up where she was found, and appellant responded, "I crashed, and I just ended up running, I ran, and my feet hurt . . . and I sat there the whole time." When asked if she was driving, she said no. When asked who was driving, she said a friend, but did not provide a name.

Other body worn camera footage admitted into evidence showed appellant telling officers that she was the mother of both J.C. and K.L., and that there had been another

3

male other than Emmanuel in the vehicle, whom she did not identify. No other male involved in the crash was found by officers. Officers obtained a blood draw warrant. Appellant's blood was drawn at Valley Baptist Medical Center in Harlingen at 4:30 a.m. Testing revealed that her blood alcohol content several hours after the accident was nearly twice the legal limit of 0.08.

Dectective Hector Lopez of the San Benito Police Department (SBPD) assisted with reconstruction of the accident and noted that there were no indications of brake marks or evasive maneuvers in the area of the crash site. According to Detective Lopez, this indicated that the driver never engaged the brakes before the crash. In addition, photographs admitted into evidence showed that the driver's seat was placed very close to the steering wheel. Investigators measured the distance between the edge of the driver's seat and the dashboard, which was five inches. Detective Manuel Alvarez of the SBPD testified that the measurement was consistent with that of a shorter driver. Investigators determined that the driver's seat was not broken or damaged as a result of the crash. According to Detective Lopez, it would not be possible for the driver's seat to move during the crash because the seat was electrical and needed power for the mechanical movements to engage. Emmanuel testified that he is six feet tall and indicated that appellant is shorter than him. According to Emmanuel, whenever he drove the Expedition, it was necessary to move the driver's seat back as far as possible to have sufficient leg room. Emmanuel stated that whenever appellant would drive the vehicle after he had, she would have to adjust the seat.

4

Emmanuel also testified that appellant and the others had gone to the beach at South Padre Island the afternoon before the crash. In particular, Emmanuel testified that appellant was intoxicated when Emmanuel drove the Expedition to a Stripes convenience store on the island "around 11, 11:30" p.m. Appellant's friend Randy, who was also in the vehicle at that time, went inside Stripes and bought an eighteen pack of Budweiser cans. Emmanuel then drove to the parking lot of Louie's Backyard around midnight. Appellant then got in the driver's seat of the Expedition, and she and Emmanuel argued over who was going to drive home. Appellant stated that she was going to drive home and that it was not his vehicle. Appellant then drove off, leaving Emmanuel in the parking lot with Randy. Randy then contacted appellant over the phone, after which he drove Emmanuel to a Stripes located near the "bridge, entering the island" to meet up with appellant. Emmanuel testified that, when he met up with appellant, he got into the vehicle and sat in the back seat of the Expedition. Though Emmanuel insisted on driving, appellant refused and threatened to leave him if he did not get into the vehicle. Randy stayed in his car and went on his own way. Appellant remained the driver as they left the island and later crashed in San Benito. Emmanuel testified that appellant seemed intoxicated because she swerved in and out of the lane and drove at a high rate of speed. According to Emmanuel, he yelled "watch out" because another car was passing at a high rate of speed and appellant was moving into its lane. Appellant jerked the wheel, and "stepped on the gas instead of stepping on the brake." Emmanuel stated that he next remembered waking up after the crash, and that he looked for appellant but did not see her.

The jury found appellant guilty on all counts and this appeal ensued.

5

## II. SUPPRESSION

In her first issue, appellant argues that the trial court erroneously denied her motion to suppress the evidence of the blood draw.

### A. Standard of Review & Applicable Law

A trial court's ruling on a motion to suppress evidence is reviewed for an abuse of discretion and should only be reversed if the outcome is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (first citing *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); and then citing *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)). We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We "afford almost complete deference" to the trial court's factual findings but review the trial court's application of the law to the facts de novo. *Id.* Our deferential review of the trial court's factual determinations also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

The Fourth Amendment guarantees that people shall be free from unreasonable searches and seizures, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Probable

cause exists for Fourth Amendment purposes when, "under the totality of the circumstances, there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location." *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *see also Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). In other words, there must be "a sufficient nexus between criminal activity, the things to be seized, and the place to be searched." *Bonds*, 403 S.W.3d at 873.

When reviewing a magistrate's decision to issue a warrant, appellate courts apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). The duty of reviewing courts is to ensure a magistrate had a substantial basis for concluding that probable cause existed. *Duarte*, 389 S.W.3d at 354. This is a flexible, non-demanding standard. *Id.* Reviewing courts must give great deference to a magistrate's probable cause determination, including a magistrate's implicit finding. *McLain*, 337 S.W.3d at 271–72. Even in close cases, reviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process. *Duarte*, 389 S.W.3d at 354. When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Reviewing courts should not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner. *Id.* at 61 n.25; *McLain*, 337 S.W.3d at 271–72. In determining whether an affidavit provides probable cause to support a search warrant, an

7

issuing court and a reviewing court are constrained to the four corners of the affidavit. *McLain*, 337 S.W.3d at 271–72.

When, as here, the trial court does not make explicit findings of fact, "we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wexler*, 625 S.W.3d at 167 (citing *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007)). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Lerma*, 543 S.W.3d at 190; *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

## B. Supporting Affidavit Was Sufficient

Appellant argues that the affidavit supporting the blood draw search warrant involved in this case lacked sufficient facts to establish probable cause.

In the affidavit, Officer "J.[ ]Santos" identifies himself as the affiant and a peace officer for SBPD. The affidavit then identifies appellant by full name as the suspect, and details identifying information including her race, sex, date of birth, identification number, height, weight, and hair color. It also states that appellant was in possession of and concealing blood, constituting evidence that appellant operated a motor vehicle in a public place in Cameron County, Texas, while intoxicated on May 18, 2020, at or about "0117[ hours]" a.m. The affidavit expressly states:

5.  The suspect was operating a motor vehicle in a public place in Cameron County, Texas on the above date and time based on the following facts:

  □  I observed the suspect doing so.

8

☐ The suspect admitted to me that the suspect had been operating a motor vehicle in a public place in Cameron County, Texas just _____ minutes prior to my arrival at _____ o'clock p.m. / a.m.

☐ A witness, (name) <u>Guerra, Emmanuel</u> conveyed information to me that **he**/she witnessed the suspect operating a motor vehicle in a public place in Cameron County, Texas <u>1</u> minute[ ]prior to my arrival at<u> 0120</u> o'clock p.m. / **a.m.**

The boxes next to the items in paragraph 5 of the affidavit were each left unchecked.

Santos also stated: "The driver was involved in a rollover accident. The driver had red bloodshot eyes. The driver advised that she had been drinking at the island. Multiple cans of Budweiser were found along the vehicle." Santos noted various observations of appellant in the affidavit, including that she had a moderate odor of alcohol, bloodshot and red/pink eyes, was argumentative, had a disorderly appearance, had an unsteady balance, a staggering walk, swayed, and was "heavy footed." Santos stated in the affidavit that, "[b]ased upon my experiences, my training in intoxication-related offenses, and my observations of the suspect . . . I believe that the suspect is intoxicated." Finally, Santos stated, "I know from my training and experience that alcohol and other intoxicating substances are absorbed into the bloodstream of an intoxicated person and that the blood of such person can be analyzed for the presence of alcohol and other intoxicating substances." We hold that the facts stated in Officer Santos's affidavit established probable cause to obtain a blood sample. Under the totality of the circumstances, there was a fair probability or substantial chance that obtaining a blood sample would elicit evidence that appellant was intoxicated while operating a motor vehicle in a public place. *See Bonds*, 403 S.W.3d at 874.

Nevertheless, appellant contends that "under #5, there are no 'following facts'

9

listed to support the allegation that [a]pellant was operating a motor vehicle in a public place," without further explanation. We observe that the affidavit contains boxes which Santos did or did not check off in order to convey certain information. Similarly, the affidavit contains underlined blank spaces, some which Santos filled in and some which he did not, and words which Santos could have circled or marked in order to convey certain information. Santos stated under section 5 of the affidavit that "<u>Guerra, Emmanuel</u> conveyed information to me that **he** . . . witnessed the suspect operating a motor vehicle in a public place in Cameron County, Texas <u>1</u> minute[ ]prior to my arrival at<u> 0120</u> o'clock . . . **a.m.**" We observe the presence of an unchecked box preceding the statement in question. However, the statement itself contains underlined words that Santos may have written, such as Emmanuel's name and the time Santos arrived at the scene. Santos also may have boldened the words "he" and "a.m." Given this, a magistrate could have reasonably concluded that Santos intended the information in the last item of paragraph 5 to be conveyed and considered despite the lack of a checked box. Holding otherwise would constitute a hypertechnical interpretation, which we will not employ. *See Martin v. State*, 620 S.W.3d 749, 764 (Tex. Crim. App. 2021) ("A search-warrant affidavit must be read in a common sense and realistic manner, without demanding hyper-technical exactitude.").

Appellant also points out that "under #12 . . . Emmanuel stated that Merina (not the [a]ppellant) was the driver." The affidavit specifically states:

12.    Drug/Controlled substance evidence.

     . . .

10

☐ Other: <u>Emmanuel stated that Merina was the driver and that they were coming from the Island.</u>

We observe that appellant was identified as the suspect in the affidavit by her full name and that the name "Merina" is not found elsewhere in the affidavit other than under section 12.[2] In other words, Merina is not identified as the suspect. Reading the affidavit as a whole supports the inference that the use of the name "Merina" was a clerical or typographical error. *See Duarte*, 389 S.W.3d at 354. The magistrate could have made this inference when making his probable cause determination, and we are required to defer to such inferences. *See id.*; *McLain*, 337 S.W.3d at 273; *Rodriguez*, 232 S.W.3d at 61; *see also Jones v. State,* 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) ("[T]he magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.") (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)). We overrule this sub-issue.

## C.     Separate Warrant Authorizing Analysis of Blood Was Not Required

Appellant further argues that, aside from the warrant to obtain her blood sample, a separate warrant was needed for analysis of her blood, citing *State v. Martinez*, 570 S.W.3d 278 (Tex. Crim. App. 2020). In *Martinez*, the Texas Court of Criminal Appeals reiterated its prior holding that chemical testing of blood constitutes a separate and discrete "search" for Fourth Amendment purposes from the physical extraction of that blood. *See id.* at 290. Over a year after *Martinez* was decided, the appellant in *Crider v. State* argued that *Martinez*'s holding necessarily meant that "he may insist that, before

---

[2] We also observe that Santos checked the box preceding the statement at issue.

the chemical testing may occur, the State must obtain a warrant expressly authorizing that test, or else identify an exception to the Fourth Amendment's ordinary preference for search warrants." 607 S.W.3d 305, 306 (Tex. Crim. App. 2020). In this case, appellant essentially adopts the same argument. However, the Texas Court of Criminal Appeals disagreed with the appellant in *Crider*, holding that

> A neutral magistrate who has approved a search warrant for the extraction of a blood sample, based upon a showing of probable cause to believe that a suspect has committed the offense of driving while intoxicated, has necessarily also made a finding of probable cause that justifies chemical testing of that same blood.

*Id.* at 307. Thus, under *Crider*, there was no need for a subsequent or separate warrant to authorize the testing of appellant's blood in this case. We overrule this sub-issue and conclude that the trial court's decision to deny appellant's motion to suppress was not outside the zone of reasonable disagreement. *See Wexler*, 625 S.W.3d at 167; *Story*, 445 S.W.3d at 732.

### III. SUFFICIENCY CHALLENGE

In her second issue, appellant argues that the evidence was legally and factually insufficient to support her convictions. The Texas Court of Criminal Appeals has held that only one standard should be used to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency. *Brooks v. State*, 323 S.W.3d 893, 905–07 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we will apply the legal-sufficiency standard when addressing appellant's sufficiency arguments.

12

**A. Standard of Review & Applicable Law**

In reviewing the sufficiency of the evidence to support a conviction, "we consider the evidence in the light most favorable to the verdict" and determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Brooks*, 323 S.W.3d at 912 (adopting the standard of review for a sufficiency challenge as set out by *Jackson*). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward*, 635 S.W.3d at 655 (quoting *Jackson*, 443 U.S. at 319); *see Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) ("If the record supports conflicting inferences, the reviewing court must presume that the factfinder resolved the conflicts in favor of the prosecution and defer to the jury's factual determinations.") (cleaned up). We remain mindful that "[c]ircumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (citing *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018)).

We measure the sufficiency of the evidence by comparing the evidence produced at trial against "the essential elements of the offense as defined by the hypothetically correct jury charge." *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge would instruct the jury that a person commits intoxication manslaughter if

13

the person: (1) operates a motor vehicle in a public place; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake. *See* TEX. PENAL CODE ANN. § 49.08. A person commits intoxication assault if the person, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, and by reason of that intoxication causes serious bodily injury to another. *See id.* § 49.07. As relevant in this case, "intoxication" is defined in the penal code as having an alcohol concentration of 0.08 or more. *See id.* § 49.01(2)(B).

A hypothetically correct charge would also instruct the jury that a person commits an offense under the applicable version of § 550.021[3] of the transportation code when the person operates a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person and does not: (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible; (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and (4) remain at the scene of the accident until the operator complies with the requirements of the Texas Transportation Code § 550.023. *See* TEX. TRANSP. CODE ANN. §§ 550.021; 550.023. To comply with § 550.023, the operator of a vehicle involved in an accident which results in personal injury or death or damage to a vehicle must, among other things, provide any

---

[3] Section 550.021 of the transportation code was recently amended by the legislature and took effect on September 1, 2023. *See* Act approved June 12, 2023, 88th Leg., R.S., ch. 709, § 45 (replacing the term "accident" with "collision").

person injured in the accident reasonable assistance if it is apparent that treatment is necessary. *Id*. § 550.023(3).

## B.     Discussion

In her brief, appellant solely contends that the evidence was insufficient to prove that she was the driver of the vehicle at the time of the accident. Because all of the charged offenses require a showing that appellant "operated" a motor vehicle involved in an accident, we construe appellant's issue as a challenge to all of her convictions. *See* TEX. PENAL CODE ANN. §§ 49.07, 49.08; TEX. TRANSP. CODE ANN. § 550.021.

It is undisputed that appellant was not initially found present at the crash site upon arrival of the bystanders and officers. According to Cerda and the officers' testimony, Emmanuel stated at the scene that appellant was the driver and that they were headed to McAllen from South Padre Island. Emmanuel testified that appellant was the driver at the time of the crash and he detailed the events leading up to and following the crash. Emmanuel also testified that just prior to the crash, appellant jerked the wheel, and had "stepped on the gas instead of stepping on the brake." This evidence was corroborated by Detective Lopez's testimony that there were no indications of brake marks or evasive maneuvers in the area of the crash site, indicating that the driver never engaged the brakes before the crash.

Emmanuel also admitted to being on probation and testified he was not promised anything by the State in exchange for his testimony. Appellant notes that Emmanuel was the only witness to state that appellant was the driver and argues that his testimony was not credible because he had a motive to testify as such because he was on felony

15

probation and "was not allowed to be in Cameron County, Texas." However, the trier of fact is responsible for resolving conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. *See Edward*, 635 S.W.3d at 655. Thus, the jury may choose to believe or disbelieve any portion of the witnesses' testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Furthermore, we presume the jury resolved conflicts in the testimony in favor of the verdict, and defer to their factual determinations. *See Garcia*, 667 S.W.3d at 762. Based on the verdict, we presume the jury credited Emmanuel's statements and testimony. *See id.*

We also observe that there was other evidence supporting the conclusion that appellant was the driver at the time of the crash. Investigators found that the driver's seat was placed very close to the steering wheel, indicating a person short in stature had been driving, and that the seat was not broken or damaged by the crash. Emmanuel testified that he is six feet tall, and indicated he had to adjust the Expedition's driver's seat as far away from the steering wheel as possible in order to get sufficient leg room. Emmanuel further testified that appellant was shorter in height than him, and that whenever he got out of the driver's seat so that appellant could drive, she would have to adjust the seat forward.

In the body worn camera footage, though appellant stated a friend was the driver, appellant did not identify or name the friend. Other body worn camera footage showed appellant telling officers that there had been a male other than Emmanuel in the vehicle, whom she did not identify. No other male involved in the crash was found at the scene by officers. In addition, prior to her statements denying she was the driver, an officer asked

16

appellant how she ended up over 500 feet away from the crash site, and appellant responded, "I crashed, and I just ended up running, I ran, and my feet hurt . . . and I sat there the whole time." Evidence of flight indicates a consciousness of guilt. *Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007).

Considering the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that appellant was the driver at the time of the accident. *See Edward*, 635 S.W.3d at 655; *see also* Tex. Penal Code Ann. §§ 49.07, 49.08; Tex. Transp. Code Ann. § 550.021. We overrule appellant's second issue.

## IV.   Evidentiary Ruling

In her third issue, appellant argues that the trial court erroneously denied the admission of photos into evidence which she claims show she "was not the driver of the vehicle shortly before the crash."

## A.   Standard of Review & Applicable Law

We review a trial judge's decision on the admissibility of evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (citing *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011)). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable." *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex.

Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Rule 901(a) of the Texas Rules of Evidence provides that, for a party to satisfy the requirement of authenticating or identifying an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX R. EVID. 901(a). Rule 901(b) "does not erect a particularly high hurdle" for authentication, *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.), and provides a nonexclusive list of methods for authenticating evidence. TEX. R. EVID. 901(b). "Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *see also Butler v. State*, 459 S.W.3d 595, 602 (Tex. Crim. App. 2015); *Mata v. State*, 517 S.W.3d 257, 266 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd).

B.    Discussion

Outside the presence of the jury during the guilt-innocence phase, appellant offered a series of photos into evidence. The photos were stills or screenshots of surveillance footage from a gas station/convenience store, and they contain time and date stamps that indicate they were taken about one-and-a-half to two hours before the time of the crash. One of the photos depicts a female with an orange top and other individuals standing outside of a black SUV parked in front of a convenience store. This photo also

depicts an individual, other than the female with the orange top, in the driver's seat of the SUV. Appellant attempted to authenticate the photo with Detective Alvarez's testimony. Detective Alvarez testified he was "fairly certain" the female in the photo was appellant, that the photo depicted her on foot, and noted that the time stamp of the screenshot was "May 17, 2020, 11:19:24 p.m.," which he affirmed was the time period before the accident. However, Detective Alvarez also testified that he could not remember all the different gas stations or convenience stores he went to as part of his investigation of this case, did not recall personally taking the photos nor receiving them during his investigation, and could not determine from the photo which "Stripes trip" this was. After Detective Alvarez testified, appellant indicated she had other photos, but was unsure whether the trial court was going to admit them. The trial court denied admission of all the photos due to "improper foundation," but allowed their admission for "appellate purposes."

Assuming without deciding that the trial court erred in denying admission of the photos, appellant cannot show she was harmed. Generally, the erroneous exclusion of evidence offered under the rules of evidence constitutes non-constitutional error and is reviewed under Texas Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). Under rule 44.2(b), any "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). In other words, nonconstitutional error requires reversal only if it affects the substantial rights of the accused. *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Ellis v. State*, 517 S.W.3d 922, 931 (Tex.

19

App.—Fort Worth 2017, no pet.).

In assessing the likelihood the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.* at 518–19. Additionally, the presence of overwhelming evidence of guilt plays a determinative role in this analysis. *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008).

The excluded photos contain time stamps indicating that the events they depict took place about one-and-a-half to two hours prior to the time of the accident. In other words, the photos, taken at face value, show that appellant was not the driver about one-and-a-half to two hours before the crash. We observe that body worn camera footage depicted statements appellant made to officers. When specifically asked if she was the driver of the crashed vehicle, appellant said no. When asked who was driving, appellant said a friend, but did not provide a name. At best, the excluded photos were merely cumulative of appellant's statements.[4] It is well-settled that the erroneous admission of evidence is generally harmless when the same evidence is admitted elsewhere without objection. *Gardner v. State*, 306 S.W.3d 274, 293 n.39 (Tex. Crim. App. 2009); *Leday v.*

---

[4] We also observe that the excluded photos arguably corroborate and were cumulative of Emmanuel's testimony that he drove the Expedition to a Stripes convenience store on South Padre Island around "around 11, 11:30" p.m, before the crash.

*State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.") (cleaned up). However, most importantly, the photos do not show that someone other than appellant was the driver *at the time of the crash*.

The evidence of appellant's guilt was overwhelming. *See Neal*, 256 S.W.3d at 285. (observing that overwhelming evidence of guilt plays a determinative role when conducting analysis for nonconstitutional error under Tex. R. App. P. 44.2(b)). In addition to the evidence demonstrating appellant was the driver and intoxicated at the time of the crash, she fled the scene of the accident, and after officers found her hiding, she initially admitted, "I crashed" the vehicle.[5]. Assuming without deciding that the trial court erred in excluding the photographs, such error was harmless in light of the overwhelming evidence of guilt shown by the evidence detailed above in our analysis of the sufficiency of the evidence in appellant's second issue. We conclude that exclusion of the photographs did not have a substantial and injurious effect or influence in determining the jury's verdict. In other words, exclusion of the photos did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Proenza*, 541 S.W.3d at 801; *Ellis*, 517 S.W.3d at 931. We overrule appellant's third issue.

---

[5] We also observe that the exclusion of the photos did not preclude appellant from presenting her defense that she was not the driver to the jury. *See Haley*, 173 S.W.3d at 518 (holding that a reviewing court may consider defensive theories and closing arguments when conducting for nonconstitutional error under Tex. R. App. P. 44.2(b)).

21

## V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
12th day of October, 2023.